In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2566

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FLAVIO PEREZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 166—**John W. Darrah**, *Judge.*

ARGUED FEBRUARY 10, 2010—DECIDED JULY 6, 2010

Before RIPPLE, MANION, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* A jury convicted Flavio Perez of two counts of filing false federal income tax returns. The district court sentenced Perez to 33 months' imprisonment. Perez appeals, claiming that the district court violated his right to be present at trial by conducting a jury instruction conference in his absence. He also challenges the district court's failure to provide a jury instruction on the government's net worth and expenditure

method of proof, its limitation on expert testimony, and the sufficiency of the evidence. We affirm.

## I.

Flavio Perez ran a drywall installation company called Chateau Drywall, Inc., and a related sole proprietorship. The sole proprietorship received income from Chateau Drywall and in turn the sole proprietorship distributed payments to Perez and other drywall installers who were classified as independent contractors. Perez reported the income from the sole proprietorship on his Schedule C.

In 2000 and 2001, Perez declared on his federal income tax return (filed jointly with his wife, Sara Bello) total income of $125,079 and $268,387, respectively. The income tax returns were prepared by tax preparers Urbaldo Rojas and Arthur Rubalcaba based on information Bello and Perez provided them.

The government believed that Perez had purposely under-reported his income and charged him in a two-count information with filing false individual federal tax returns in violation of 26 U.S.C. § 7206(1).[1] Perez pleaded not guilty and proceeded to trial. At trial, the government sought to prove its case using the "net worth and expenditure method" ("net worth method"). Under the net worth method, an individual's actual income is estimated by comparing his net worth at the beginning

---

[1] Perez waived indictment by a grand jury.

of the tax year to his net worth at the end of the tax year, taking into account expenditures for basic living expenses and any non-taxable sources of assets (such as gifts, inheritances, and loans). *See Holland v. United States*, 348 U.S. 121, 125 (1954) (explaining the net worth method of proof).

The government presented evidence that on December 31, 1999, Perez's net worth was approximately $100,000, that during 2000, he had expenditures of about $123,000, and that by the end of the year his net worth increased to $218,911. Because Perez had reported income of only $125,079 for 2000, the government's expert concluded that (to increase his net worth by as much as he did in 2000) Perez had unreported income of more than $100,000. For 2001, the government's expert determined that Perez's net worth increased from $218,911 to $571,488, and that he had expenditures of approximately $186,000. Because Perez had reported income of only $268,387 for 2001, the government's expert concluded that (to increase his net worth by as much as he did in 2001) Perez had unreported income of more than $200,000.

At trial, the government also presented evidence that Perez gave clients discounts for cash jobs, paid some of his independent contractors in cash, and did not inform his wife—who usually provided the tax preparers with the financial information used to prepare the tax returns—of some of the cash-based jobs. Additionally, the government presented evidence that Perez provided the tax preparers with a last-minute list of deductions, without

any supporting documentation, exceeding by more than $111,000 the amount of deductions they had calculated using business records Bello gave them.

Perez presented his own expert witness who challenged numerous aspects of the government's calculation of Perez's income under the net worth method. Perez also elicited testimony from his expert that the net worth method is "not the most accurate or reliable method for determining taxable income. The most accurate and reliable would be the specific items method that was mentioned by [the government's expert]." The government objected to Perez's expert expressing general criticisms of the method and asked that the expert's testimony be limited to specific criticisms about how the net worth method was applied in Perez's case. At side bar, the district court stated, "[h]e just opined that the net worth analysis itself is somehow unreliable. What's the basis of that opinion?" Perez's attorney responded: "Based on his experience." The district court responded, "No," and the prosecutor then said: "We would move to strike that." The district court then stated:

> Yes. You can render an opinion—he can testify in the form of opinion if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts. What testimony is he going to offer that would supply the data or facts to support that opinion, and what principles or methodology did he use to result to arrive at that opinion?

Rather than respond to the district court's questions, Perez's trial counsel stated, "I'll just move on." The district court responded: "No, no," to which Perez's attorney said, "We'll withdraw it." The district court then responded: "No. We're going to sustain the objection, and I'll instruct them to disregard." Perez's attorney responded: "Absolutely, judge." The court so instructed the jury.

Bello also testified; she testified that they had provided Rojas and Rubalcaba all relevant information and had relied on the tax professionals to prepare accurate income tax returns. Bello explained that she had informed Rojas and Rubalcaba that Perez had received a piece of land in payment of a $60,000 business debt and that, unbeknownst to the Perezes, Rojas and Rubalcaba had neglected to include that income on Perez's tax return.

After the close of evidence, the district court met with the attorneys in open court to discuss jury instructions. Perez, however, was not present for this conference. The government offered a jury instruction explaining the net worth method, but Perez's attorney stated that the defense did not want the jury provided with a net worth instruction because by explaining the net worth method to the jury, "[i]t's basically the stamp of approval by the court." He also stated that Perez's defense was to challenge the accuracy and completeness of the net worth method.

The following day the judge revisited the issue, but Perez was also absent for this conference. The judge

began by noting that Perez has "the right to instruct the jury on the net worth method." The court then asked Perez's attorney: "[D]o you wish to give the instruction?" He responded: "No, your Honor, we do not." The court then added: "You understand that you have an absolute right to give it, and you understand that if you offered such an instruction, I would give it." Again, Perez's attorney responded: "Yes, your Honor, I do." The court further clarified Perez's intent by asking: "In representing your client, you choose to follow a strategy that would not include giving this instruction?" Perez's attorney responded: "Correct, your Honor." The Assistant United States Attorney at this point noted that Perez was not present and the court followed up by asking Perez's attorney: "Have you discussed this with your client as well?" Perez's attorney replied: "I have discussed it with him. I haven't discussed it in terms of explaining *Tolbert*,[2] of course, and I will confirm this when he gets here. And if you would like, we can put it back on the record that I've now explicitly told him that." The court decided instead to direct Perez's attorney to inform him of the court's comments and to tell Perez the court would give the instruction if he desired. The court then noted that "at the completion of the closing arguments, if you don't approach me and say you want the instruction given, I'll deem you to have

---

[2] Perez's attorney was referring to *United States v. Tolbert*, 367 F.2d 778, 781 (7th Cir. 1966), where this court held that the lack of a net worth instruction constituted plain error. *See infra* at 11.

waived whatever rights you have on behalf of your client with his concurrence to the giving of that instruction. Is that fair enough?" And Perez's attorney responded: "Fair enough, your Honor."

After closing arguments, Perez's attorney did not ask for the net worth method instruction, and it was not given. The jury convicted Perez on both counts, and the district court sentenced him to twenty-two months' imprisonment on count one and eleven months' imprisonment on count two, to run consecutively. Perez appeals.

## II.

On appeal, Perez presents four challenges to his conviction. First, he argues that the district court violated his right under Federal Rule of Criminal Procedure 43 to be present at trial by conducting the jury instruction conference in his absence. Second, Perez challenges the district court's failure to provide a jury instruction on the government's net worth method of proof. Third, he argues the district court improperly barred his expert witness's testimony concerning general flaws in the net worth method. Finally, Perez claims that the evidence was insufficient to support his conviction. We address each issue in turn.

### A.  Federal Rule of Criminal Procedure 43

Perez first argues that the district court violated his rights under Rule 43 to be present at trial by conducting

the jury instruction conference in his absence. Rule 43 provides that "the defendant shall be present . . . at every stage of the trial including the impaneling of the jury and the return of the verdict and at the imposition of sentence, except as otherwise provided by this rule." Fed. R. Crim. P. 43(a). Rule 43(b)(3), however, provides that a "defendant need not be present [when] . . . [t]he proceedings involve only a conference or hearing on a question of law." The government claims that because jury instructions concern questions of law, Perez was not entitled to be at the jury instruction conference. Perez responds that because the issue of whether to give the net worth instruction concerned a question of strategy rather than of law, he had the right to be at the conference.

Perez's argument is misplaced. Courts are not in the business of holding hearings to oversee or approve a defendant's trial strategy; they hold hearings to address legal or factual issues (or sometimes both) or to establish case management schedules. True, trial courts often inquire into strategy to establish that waivers are knowing and voluntary and to preserve judicial resources (by avoiding the potential for reversible error or collateral attack). But a court's inquiry into a defendant's strategy does not alter the purpose of the conference, which in this case was to determine the appropriate jury instructions. The content of jury instructions is a question of law, and as such the jury instruction conference, assuming *arguendo* it was a stage of trial, fell within the Rule 43(b)(3) exception for "a conference or hearing on a question of law." *United States v. Rivera*, 22 F.3d 430, 438-39 (2d Cir. 1994) ("The content of the instructions to be given to the jury is purely a legal matter, and

a conference to discuss those instructions is thus a conference on a question of law at which a defendant need not be present.") (internal citations omitted); *United States v. Sherman*, 821 F.2d 1337, 1339 (9th Cir. 1987) ("We hold that a hearing outside the presence of the jury concerning the selection of jury instructions is a 'conference or argument upon a question of law . . . .'"); *United States v. Graves*, 669 F.2d 964, 972 (5th Cir. 1982) ("A defendant does not have a federal constitutional or statutory right to attend a conference between the trial court and counsel concerned with the purely legal matter of determining what jury instructions the trial court will issue.").

Perez also argues that because his trial attorney objected to the government's net worth instruction based on strategy and not the law, Rule 43 required the district court to inform Perez of the discussions that occurred during the jury instruction conference and ask Perez his position on the issue. Again, Perez's position is misplaced. While a defendant

> has ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal . . . the remaining decisions are in the hands of counsel. It could hardly be otherwise, unless trials are to be indefinitely extended as judges ask the defendant whether each decision (or omission) meets with his pleasure. The process would be worse than cumbersome. It would undermine the defendant's ability to entrust decisions to a legally trained person.

*United States v. Boyd*, 86 F.3d 719, 723 (7th Cir. 1996).

The right to specific jury instructions is one of those "remaining decisions" that rests in the hands of the attorney. Thus, this court rejected the argument that a defendant must personally waive jury instructions in *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996), holding:

> The right to object to jury instructions on appeal is waived if the record illustrates that the defendant approved of the instructions at issue. We do not require the defendant personally to waive objection, nor is the district court required to address the waiver question directly to the defendant. The waiver must, however, arise out of voluntary affirmative conduct, consistent with the proactive description of waiver in *Johnson*, 304 U.S. at 464 ("intentional relinquishment or abandonment").

*Griffin* then concluded that the defendant waived any objection to the jury instructions when "[h]is counsel explicitly confirmed the district court's belief that the defendants would prefer [Instruction] 53A." *Id. See also United States v. Babul*, 476 F.3d 498, 500 (7th Cir. 2007) (explaining that some rights are so important that only a defendant may personally waive them, but "[b]y contrast, choices about trial practice and management—should a given witness's testimony be presented? should a hearsay objection be made? *what language should be proposed for the jury instructions?*—are committed to counsel, not only because they are numerous (asking the defendant each time would be impractical) but also because they are the sort of choices for which legal

training and experience are most helpful") (emphasis added).

Similarly, in this case, while it would have been relatively easy (and prudent) for the district court to obtain Perez's personal waiver on the record, the court was not required to address the jury instructions directly with Perez.

## B.  Net Worth Jury Instruction

Next, Perez argues that the district court's failure to provide the net worth method instruction constitutes plain error which requires reversal of his conviction. This court has held that "the complete lack of any instruction on the nature of the [net worth] method and its concomitant assumptions and inferences affects a substantial right of the accused and constitutes plain error . . . and requires a reversal despite the lack of an objection by the defendant to such omission." *Tolbert*, 367 F.2d at 781. But while we may use plain error review to correct serious errors despite a defendant's failure to object, such review "cannot be used for the purpose of revoking an otherwise valid waiver." *United States v. Lakich*, 23 F.3d 1203, 1207 (7th Cir. 1994). And here, Perez unquestionably waived his right to the net worth instruction: his attorney did not merely fail to object to the instruction, but rather insisted that the instruction *not* be given, even after having been expressly informed of the right to the instruction and that the court would

deem the right waived.[3] Because Perez waived the right to the net worth instruction, there was no error. *Babul*, 476 F.3d at 500 ("Waiver means that there was no error; even plain-error review is unavailable."); *Boyd*, 86 F.3d at 722 ("But steps the court takes at the defendant's behest are not reversible, because they are not error; even the 'plain error' doctrine does not ride to the rescue when the choice has been made deliberately, and the right in question has been waived rather than forfeited.").

Moreover, even if Perez had not waived the issue, he could not establish plain error because the lack of the net worth instruction in this case was harmless. *See United States v. Olano*, 507 U.S. 725, 734-35 (1993) (holding that under plain error review, the question of prejudice is the same as the harmless error analysis, except that here, the defendant bears the burden of persuasion with respect to prejudice). The reason the net worth instruction is so imperative is that "the method requires assumptions, among which is the equation of unexplained increases in net worth with unreported taxable income. Obviously such an assumption has many weaknesses. It may be that gifts, inheritances, loans and the like account for the newly acquired wealth." *Holland*, 348 U.S. at 127. Thus, "without guarding instruction," there is "a great danger that the jury may assume that once the

---

[3] As noted above, *see supra* at 9-11, an attorney may waive the right to jury instructions on behalf of his client; a defendant need not personally waive his right to a net worth instruction.

Government has established the figures in its net worth computations, the crime of tax evasion automatically follows." *Id.* at 127-28. But in this case there was absolutely no evidence that Perez had non-taxable inflows which could explain the increase in his net worth. Accordingly, the failure to provide a net worth instruction would be harmless in any event.

### C. Expert Testimony

Perez next argues that the district court erred in pro-hibiting his expert from testifying concerning flaws in the net worth method. However, as the trial transcript excerpted above makes clear, *see supra* at 4-5, after the government objected to Perez's attorney eliciting testimony from his expert on general flaws in the net worth method, Perez's attorney voluntarily abandoned this line of questioning. Therefore, Perez waived any challenge to the district court's ruling. *Cf. United States v. Wilkins*, 659 F.2d 769, 775 (7th Cir. 1981) (holding that defendant "in withdrawing his motion to suppress waived any objection to the admission of the statement").

Perez's appellate attorney (who did not represent him below), attempts to avoid the waiver by asserting that seeking to withdraw the question was merely "a trial tactic to not give the jury the impression that he was asking improper questions." The record shows, however, that the exchange concerning limits on Perez's expert's testi-mony occurred during a side bar and thus outside the hearing of the jury. Additionally, Perez's proposal to "move on" and "withdraw the question" came in

response to the district court's inquiry for the basis of the expert's opinion. Thus, the waiver came at a point when the district court was still willing to allow the question—assuming the expert's opinion was proper under *Daubert*. Finally, to the extent that Perez's trial attorney was making a tactical decision in withdrawing the question, as Perez's appellate attorney asserts, that actually supports a finding of waiver. *See, e.g., United States v. Cooper*, 243 F.3d 411, 416-17 (7th Cir. 2001) (holding that the defendant waived (as opposed to forfeited) any objection to the admission of evidence where conduct of the defendant's attorney demonstrated it was a strategic decision not to object, as opposed to a mere oversight).

## D. Sufficiency of the Evidence

Finally, Perez argues that the evidence was insufficient to support the jury's verdict. A defendant seeking to challenge the sufficiency of the evidence faces a daunting task. *United States v. Seymour*, 519 F.3d 700, 714 (7th Cir. 2008). "In considering a sufficiency of the evidence challenge, this court considers the evidence in the light most favorable to the Government, defers to the credibility determination of the jury, and overturns a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Huddleston*, 593 F.3d 596, 601 (7th Cir. 2010).

In this case, the jury convicted Perez of filing a false tax return in violation of § 7206(1). Section 7206(1) provides:

> Any person who [w]illfully makes and subscribes any return, statement, or other document which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

26 U.S.C. 7206(1). "A conviction 'under section 7206(1) requires proof that: (1) a person made or subscribed to a federal tax return which he verified as true; (2) the return was false as to a material matter; (3) the defendant signed the return willfully and knowing it was false; and (4) the return contained a written declaration that it was made under the penalty of perjury.'" *United States v. Powell*, 576 F.3d 482, 495 (7th Cir. 2009) (quoting *United States v. Presbitero,* 569 F.3d 691, 700 (7th Cir. 2009)).

In order to prove its § 7206(1) case, the government used the net worth method to show that Perez's federal tax returns were false, i.e., that he did not report all of his income. Specifically the government presented expert testimony from Richard Lexby, a CPA who has been an IRS revenue agent since 1978; Lexby has previously testified as an expert fourteen times in federal district court and four times in federal tax court. Lexby testified in great detail about how he calculated Perez's net worth and income, explaining that he had reviewed Perez's bank accounts, a check from Perez's in-laws, an

IRA account, outstanding loans, real estate purchased by Perez, and the value of the Perezes' automobiles. Lexby walked the jury through his calculations, elaborating on each of the various components in his net worth analysis. Lexby then provided the jury with the bottom line, testifying that on December 31, 1999, Perez's net worth was approximately $100,000, that during 2000, he had expenditures of about $123,000, and that by the end of the year his net worth increased to $218,911. Lexby concluded that because Perez had reported income of only $125,079 for 2000, Perez's unreported income exceeded $100,000. For 2001, Lexby testified that Perez's net worth increased from $218,911 to $571,488 and that he had expenditures of approximately $186,000. Lexby concluded that because Perez had reported income of only $268,387 for 2001, Perez had unreported income of more than $200,000.

Perez argues that the IRS's net worth evidence was insufficient to support his conviction because of numerous flaws in Lexby's analysis. However, as we explained in *United States v. Gonzalez*, 933 F.2d 417, 429 (7th Cir. 1991), "any questions or problems concerning the expert's opinion and testimony may be thoroughly explored during the cross-examination of the expert witness." In this case, Perez's trial attorney cross-examined the government's expert on the alleged flaws. The jury also heard the testimony of Perez's expert about these supposed flaws "and obviously rejected it; on a sufficiency-of-the-evidence challenge, we will not second-guess the jury's credibility determinations." *United States v. Olofson*,

563 F.3d 652, 659 n.6 (7th Cir. 2009).[4] Moreover, as this court made clear in *United States v. Pree*, 408 F.3d 855, 867 (7th Cir. 2005), "to establish falsity as to the [tax] returns, the Government needed only to prove that [defendant] had unreported income, not the exact amount of such unreported income or the existence of a tax deficiency." *See also Leeby v. United States*, 192 F.2d 331, 334 (8th Cir. 1951) ("It must be borne in mind that this was not an action to recover the amount of income taxes alleged to be due, nor an action in which it was necessary to determine the exact amount of defendant's income for the years in question. On this phase of the case all that it was necessary to show was that there was omitted from the reported income a substantial amount."). Perez's own expert testified that he did not know the net effect of all the items and flaws he had purportedly identified. Thus, even if there were some flaws in Lexby's analysis, the jury still could have concluded that Perez had nonetheless failed to report a substantial amount of income.

Perez also argues that the evidence was insufficient to support a finding of willfulness. As noted above, to sustain a conviction under § 7206(1), the government must establish that the defendant willfully signed a false tax return. *See supra* at 15. In *Cheek v. United States*, 498 U.S. 192, 201 (1991), the Supreme Court held that "[w]illfulness, as construed by our prior decisions in

---

[4] Perez does not argue that the district court abused its discretion in admitting Lexby's testimony under Rule 702.

criminal tax cases, requires the government to prove that the law imposed a duty on the defendant, that defendant knew of this duty, and that he voluntarily and intentionally violated that duty." Willfulness may be proven by circumstantial evidence. *United States v. Ytem*, 255 F.3d 394, 396 (7th Cir. 2001). And willfulness

> may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.

*United States v. Eaken*, 17 F.3d 203, 206 (7th Cir. 1994) (quoting *Spies v. United States*, 317 U.S. 492, 499 (1943)).

In this case, the evidence established that Perez knew he had a duty to report income from his various drywall jobs—because he did in some instances. The evidence was also more than sufficient to support the jury's verdict that Perez willfully violated that duty by not reporting all of his income on his income tax returns. Specifically, the evidence showed that Perez was in control of the financial affairs of his drywall business, that he often received payment in cash for drywall work, and that he made substantial cash investments in real estate, cars, and collectible weapons. The evidence also showed that Perez received cash payments from customers and did not inform his wife of all of those payments, and his wife was the one who provided the

financial information to the tax preparer. Additionally, the government's net worth expert explained how the increase in Perez's net worth during the 2000 and 2001 tax years meant that Perez had under-reported his taxable income for those years by nearly $300,000. Perez's use of discounts for cash jobs—i.e., jobs where there is no paper trail—is further circumstantial evidence of intent. *See, e.g., United States v. Roman*, 492 F.3d 803, 804 (7th Cir. 2007) (noting that "a lot of 'cash' that changes hands in the underground economy, . . . [does] not find [its] way onto . . . federal income tax returns"). Together, this evidence reasonably supported the jury's conclusion that Perez willfully filed false income tax returns.

In response, Perez argues that the evidence was not sufficient to show that he willfully filed a false tax return because he reasonably relied upon his tax preparers to report the correct income. Perez correctly notes that

> [i]t is a valid defense to a charge of filing a false return if a defendant provides full information regarding his taxable income and expenses to an accountant qualified to prepare federal tax returns, and that the defendant adopts and files the return as prepared without having reason to believe that it is incorrect.

*United States v. Whyte*, 699 F.2d 375, 379 (7th Cir. 1983).

However, in this case, the jury could have reasonably concluded, based on testimony from the government's expert, that Perez did not provide his tax preparers with complete information of all sources of income given the extent of the increase in his net worth during the time

period at issue. The jury also could have reasonably concluded that Perez did not provide his tax preparers full information concerning business expenses. Specifically, the government presented testimony from Rojas that on April 14, 2001, the day before his 2000 tax return was due, Perez, accompanied by his wife, went to Rojas's office and gave him a list of deductions; those deductions exceeded the amount of deductions Rojas had calculated using the information Bello had previously provided by more than $111,000. Rojas further testified that Perez had no supporting documentation for these deductions. Bello denied the April 14, 2001, meeting occurred and maintained that they never gave Rojas any revised figures for deductions, claiming instead that Rojas had made the changes on his own. The jury, however, could have reasonably disbelieved Bello's testimony and concluded that they had falsely provided a list of deductions to Rojas. And if the jury concluded Bello was lying about this meeting and these deductions, it likewise could have reasonably concluded that she was lying to cover up for Perez's willful false reporting of income.

Perez further asserts that the evidence was not sufficient to show willful intent to falsely report income because his wife brought to the attention of their accountants the land they received in payment of a $60,000 debt. Perez argues that

> [i]f he was trying to falsify anything he would have kept this transaction hidden in that by disclosing it he was in essence increasing his net liability not

decreasing it. This fact alone shows that Mr. Perez's return was not a willful false return as alleged, but rather a complicated one which confounded everyone, even two experienced accountants which he relied on.

Appellant Brief at 35. The jury, however, heard this evidence and nonetheless concluded that Perez willfully withheld information about other income from his tax preparers. We cannot say that the jury acted unreasonably in so concluding. *See, e.g., Powell*, 576 F.3d at 495 (rejecting defendant's argument that evidence was insufficient to establish willfulness where he had filed an amended tax return, noting that "for what it was worth, [the defendant] was able to put that evidence in front of the jury"); *United States v. Dunn*, 961 F.2d 648, 651 (7th Cir. 1992) (affirming defendant's conviction under § 7206(2) and holding the jury was entitled to discredit evidence that defendant relied on two attorneys, one of whom was also a CPA, in finding defendant acted willfully). Moreover, given the large amount of unreported income (as established through the net worth method), a reasonable jury could have concluded that Perez willfully failed to report all of his income.

### III.

The district court did not violate Perez's right under Federal Rule of Criminal Procedure 43 to be present at trial by conducting a jury instruction conference in his absence because such a conference concerns questions of law and is thus exempt from Rule 43. Perez, through his attorney, waived any challenge to the district court's

failure to provide a jury instruction on the government's net worth and expenditure method of proof. Perez also waived any challenge to the district court's limitation on his expert witness's testimony. Finally, the evidence was more than sufficient to support the jury's finding that Perez willfully filed false income tax returns in violation of § 7206(1). For these and the foregoing reasons, we affirm.