In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3608

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFERY CARTER and KENTRELL WILLIS,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 971—**John F. Grady**, *Judge.*

ARGUED JUNE 7, 2012—DECIDED AUGUST 29, 2012

Before MANION, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* As Darrick and Geraldine Anderson were returning home from a birthday party, two men—Jeffery Carter and Kentrell Willis—appeared and robbed the couple at gunpoint. Carter and Willis made off with the couple's vehicle and their belongings, but, unbeknownst to them, one of the cell phones taken from the Andersons was enabled with a GPS tracking feature. As a result, police were easily able to monitor

their movements and track them down that same night. Carter and Willis were arrested and, in a joint trial with separate juries for each defendant, convicted of carjacking, using a firearm during the carjacking, and being a felon in possession of a firearm. On appeal, they argue that the district court improperly instructed the jury, that there was insufficient evidence to support their convictions, and that joinder of their offenses was improper. We find none of these contentions meritorious and accordingly affirm their convictions.

## I. BACKGROUND

At about 11:00 p.m. on June 23, 2009, Darrick and Geraldine Anderson pulled up to their home in their 2002 Ford Explorer. As Darrick parked the vehicle, he noticed two men brazenly approaching from both sides. Carter walked up to the passenger's side, telling Geraldine that he had a gun and it was "stick-up time" and demanded that she give him her purse. Meanwhile, Willis came around to the driver's side of the vehicle, where he pointed a handgun at Darrick's head and ordered him out of the car while repeatedly warning, "I'll kill you." Darrick got out of the car without resistance, while Willis continued to point the gun at his head.

Carter then brought Geraldine around to the driver's side of the vehicle, and had both Darrick and Geraldine empty their pockets and give him their belongings. The items Carter took included the keys to the Explorer and Geraldine's cell phone—which, importantly, was

fitted with a GPS tracking feature. With the keys to the Explorer in hand, Carter and Willis entered the vehicle and drove away. The incident left Darrick and Geraldine shaken but physically unharmed.

After Carter and Willis were a safe distance away, the Andersons went into their home to call the police and report the carjacking. Once inside, they told their daughter Nicole the details of the incident. Thinking quickly, Nicole used her laptop computer to track the location of Geraldine's stolen cell phone—and in turn the carjackers' movements—through the phone's GPS tracking feature. This information was then relayed to Chicago police officers in the area, along with the Andersons' description of the two perpetrators.

About a half-hour after the carjacking, Carter and Willis abandoned the stolen Explorer outside of a laundromat. They then walked to a nearby gas station, where Carter had arranged for his uncle, David Chew, to pick them up in Chew's van. Inside the van, Carter and Willis joined Chew, Milton Latham (Carter's other uncle) and Joseph Billups (Carter's cousin). Shortly after leaving the gas station, Carter and Willis spotted a man, Jose Garcia, walking along the street. Evidently deciding that Garcia would be an easy target to rob, Carter and Willis jumped out of the van and chased Garcia down. Carter then held a handgun to Garcia's chest while he and Willis took Garcia's wallet and phone. They returned to the van, and Garcia quickly went home and reported the robbery to police.

At about 12:12 a.m., Chew's van pulled into a gas station, where all of the occupants got out of the van. Once

outside, Carter attempted to give the handgun used in the robberies to Latham, but he refused to take it and instead simply placed the gun back inside Chew's van. Shortly afterwards, police officers patrolling the area spotted Willis and noted that he fit the description of one of the carjackers. The officers detained all five individuals for questioning and soon noticed a firearm inside the van, visible from the van's window. The firearm was later identified as a loaded Ruger .22 caliber six-shot revolver with a five-inch blue steel barrel, serial number 63-40041. Carter and Willis were arrested, and afterwards Carter confessed to taking part in the Andersons' carjacking and Garcia's robbery.

Carter and Willis were both charged with carjacking, in violation of 18 U.S.C. §§ 2, 2119 (Count One); using and carrying a firearm during the carjacking, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A) (Count Two); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Three as to Willis and Count Four as to Carter). They were not charged with Garcia's robbery, but evidence of Garcia's robbery was later admitted to prove the defendants' possession of the Ruger pistol. Prior to trial, the district court granted a severance under *Bruton v. United States*, 391 U.S. 123 (1968), because Carter had provided written post-arrest statements incriminating both himself and Willis. In order to conserve resources, the court elected to hold a single trial with separate juries empaneled for each defendant. On June 28, 2011, each jury returned a guilty verdict on all counts as to its respective defendant, and the district court subsequently sentenced both

Carter and Willis to 264 months' imprisonment. Carter and Willis timely appealed their convictions.

## II. ANALYSIS

Carter and Willis raise several arguments on appeal. First, they argue that the district court gave an erroneous instruction as to the mental state required under the federal carjacking statute. Carter also separately argues that the court erred in giving his jury an aiding and abetting instruction. Next, they claim that there was insufficient evidence that the specific firearm identified in the indictment was the same firearm used to commit the carjacking. Finally, they claim that joinder of their felon-in-possession counts with the remaining counts of the indictment was improper under Rules 8 and 14 of the Federal Rules of Criminal Procedure. We address each of these arguments in turn.

*A. Jury Instructions*

Carter and Willis begin by contesting the jury instructions given by the district court. We review *de novo* whether an instruction fairly and accurately summarizes the law, *Clarett v. Roberts*, 657 F.3d 664, 672 (7th Cir. 2011), and review a district court's decision to give a particular instruction for an abuse of discretion, *United States v. McKnight*, 665 F.3d 786, 790-91 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 2756 (2012). Even if an instruction is erroneous, a defendant must establish actual prejudice

to win reversal. *United States v. Collins*, 223 F.3d 502, 507 (7th Cir. 2000).

### 1. Requisite Mental State

Carter and Willis first argue that the district court erroneously instructed the jury as to the required mental state for the carjacking offense alleged in Count One. The district court's instruction tracked the mental state alleged in the indictment, requiring the government to prove that each defendant "intended to cause serious bodily harm when the defendant took the motor vehicle." (Appellants' Br. at 12-13.) The defendants contend that this instruction alters the mental state described in the federal carjacking statute. That statute provides that a person commits a carjacking if he or she *"with the intent to cause death or serious bodily harm* takes a motor vehicle [in interstate commerce] from the person or presence of another by force and violence or by intimidation, or attempts to do so." 18 U.S.C. § 2119 (emphasis added). Although the statute is written in the disjunctive, the defendants argue that "the intent to cause death or serious bodily harm" describes a single mental state: "the specific intent to kill or its near equivalent." (Appellants' Br. at 13.) Omitting the phrase "to cause death" from the jury's instructions, the defendants conclude, alters the mental state required by § 2119. We disagree.

The carjacking statute is written in the disjunctive: a defendant must possess the intent to cause death *or* serious bodily harm. "Canons of construction ordinarily

suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Here, the inference that Congress intended these terms to have a separate meaning is buttressed by the fact that § 2119 explicitly distinguishes between serious bodily injury and death only a few sentences after describing the requisite mental state. A defendant may be sentenced to up to twenty-five years' imprisonment if she causes serious bodily injury, but may be sentenced to life imprisonment or death if she causes death. 18 U.S.C. § 2119(2), (3); *see also Jones v. United States*, 526 U.S. 227, 239-52 (1999) (holding that § 2119 defines three distinct crimes: simple carjacking, carjacking resulting in serious bodily injury, and carjacking resulting in death). The plain language of the statute indicates that a defendant can satisfy the requisite mental state by acting with the intent to cause *either* death *or* serious bodily harm.

Moreover, the defendants conceded in the district court that, hypothetically, if the evidence at trial could only demonstrate that a defendant intended to shoot a victim in the leg, then the intent requirement of § 2119 would be satisfied. Of course it would—that hypothetical defendant would have acted with the specific intent to cause serious bodily harm and therefore satisfied the intent requirement described in § 2119. *See United States v. Jones*, 188 F.3d 773, 777 (7th Cir. 1999) ("[T]he evidence was sufficient to support a finding of *conditional intent to do the driver harm* had he not complied with the defendants' demands.") (emphasis added); *accord*

*United States v. Douglas*, 489 F.3d 1117, 1128 (11th Cir. 2007) (intent requirement in § 2119 satisfied where defendant had intent "to seriously harm [the victim] if it had been necessary to complete the taking of the vehicle"). Given that a defendant need not have acted with a specific intent to kill in order to meet the intent requirement, the defendants offer no sound argument as to why a jury instruction omitting the phrase is reversible error.[1]

The defendants also exaggerate due process concerns that would arise should we give the disjunctive terms of § 2119 independent meaning. First, they argue that such an interpretation of the statute "would raise funda-

---

[1] The defendants point to the Supreme Court's decision in *Holloway v. United States*, 526 U.S. 1 (1999), to argue that § 2119 describes a single mental state. In *Holloway*, the Court held that "[t]he intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *Id.* at 12. They also cite to other circuits' pattern jury instructions containing similar language to argue this same point. Nothing in the Court's holding or in the pattern jury instructions indicates that a defendant possessing only the intent to seriously harm, and not an intent to kill, would not satisfy the intent requirement of § 2119. Indeed, the quoted language in *Holloway* cuts equally against the defendants' argument because it is still phrased in the disjunctive: a defendant must possess the intent to seriously harm *or* kill the driver. *See id.*

mental due process concerns regarding notice of the conduct to which a defendant must conform." (Appellants' Reply Br. at 3.) They cite to no case law to support this argument. Nevertheless, under the vagueness doctrine, a criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). We hardly think that interpreting § 2119 to punish both those who act with an intent to kill, as well as those who act with an intent to cause serious bodily harm, would cause any confusion among ordinary people or is susceptible to arbitrary enforcement.

Second, the defendants claim that alternative mental states in a criminal statute for a single offense will necessarily raise questions of jury unanimity. A jury in a federal criminal case "cannot convict unless it unanimously finds that the Government has proved each element" of a crime. *Richardson v. United States*, 526 U.S. 813, 817 (1999). But when a statute includes several possible means of committing a single element of a crime, a jury need not unanimously agree as to which of the several means the defendant used to satisfy that element. *See id.* And although the defendants cite *Schad v. Arizona*, 501 U.S. 624 (1991), for support, that case makes clear that a jury also need not agree on "alternative means of satisfying the element of *mens rea*." *Id.* at 632. The intent to kill and the intent to cause serious bodily harm are

simply two different means by which the requisite mental state for carjacking may be satisfied.

In any event, even if § 2119 describes only a single mental state of "death or its near equivalent," as the defendants contend, any error in the district court's instruction was harmless. *See United States v. Matthews,* 505 F.3d 698, 706 (7th Cir. 2007) (harmless-error analysis applies when jury instructions omit or misstate an element of an offense). The jury found beyond a reasonable doubt that the defendants had the requisite intent to cause serious bodily harm if necessary to steal the car. *See Holloway v. United States*, 526 U.S. 1, 12 (1999) (holding that conditional intent satisfies *mens rea* requirement of § 2119). The defendants posit that, had the jury been properly instructed, it could have found that the defendants "only" intended to cause serious bodily harm, rather than "death or near death." There can be no serious argument that this purported error contributed to the jury's verdict in any way. Willis pointed a gun directly at Darrick's *head* and repeatedly told Darrick that he would *kill* him, while Carter was only a few feet away telling Geraldine that it was "stick-up time." Any alleged error in the jury instructions was harmless beyond a reasonable doubt.

### 2. Aiding and Abetting

Carter individually argues that the district court improperly gave an aiding and abetting instruction to his jury. "[A]n instruction on aiding and abetting may be

given so long as the evidence warrants the instruction and no unfair surprise results." *United States v. Powell*, 652 F.3d 702, 708 (7th Cir. 2011) (internal quotation marks). We review a district court's decision to give such an instruction for an abuse of discretion. *United States v. Johnson*, 680 F.3d 966, 980 (7th Cir. 2012).

Carter does not contend that the district court's aiding and abetting instruction was an incorrect statement of law. Rather, he claims that giving the instruction at all was improper for two reasons. First, Carter argues that there was no legitimate issue of aiding and abetting because he was charged as a principal for the carjacking. We can dispense with that argument quickly because it is well established that a defendant charged as a principal may be convicted as an aider and abettor—even where an indictment makes no reference to 18 U.S.C. § 2, an aiding and abetting statute. *United States v. Salazar*, 983 F.2d 778, 782 (7th Cir. 1993); *see also United States v. Ellis*, 121 F.3d 908, 924 (4th Cir. 1997) (noting that even if a prosecutor tries a case based solely on a defendant's liability as a principal, that does not preclude the trial judge from giving an aiding and abetting instruction). Here, the indictment expressly referred to 18 U.S.C. § 2, so Carter cannot plausibly argue that the instruction resulted in an unfair surprise.

Carter next claims that as a result of the aiding and abetting instruction, the government was not required to prove beyond a reasonable doubt that he had the requisite state of mind to commit the offense of carjacking. Instead, he posits, the government could simply

point to Willis's state of mind and convict Carter on that basis. But it is well established that "the state of mind required for conviction as an aider and abettor is the same state of mind required for the principal offense." *United States v. Reiswitz*, 941 F.2d 488, 494 (7th Cir. 1991). In order to convict a defendant of aiding and abetting, the government must prove: (1) association, i.e., "that the defendant shared the principal's criminal intent"; and (2) participation, i.e., that the defendant engaged in some overt act to aid in the venture's success. *United States v. Sewell*, 159 F.3d 275, 278 (7th Cir. 1998). The district court's instructions adequately advised the jury of the required elements and requisite mental state, and that they must be proven beyond a reasonable doubt.

In raising this second argument, Carter claims there was no evidence that he shared Willis's intent to cause serious bodily harm, and that therefore the evidence was insufficient to warrant an aiding and abetting instruction. Carter relies heavily on the fact that neither of the Andersons were physically harmed during the carjacking, pointing to this as direct evidence that neither he nor Willis intended to physically harm anyone. But conditional intent is all that is required to satisfy § 2119—a defendant need only have had the intent "to do the driver harm had he not complied with the defendant['s] demands." *Jones*, 188 F.3d at 777. The Andersons complied with all of the defendants' demands, so the fact that they were not harmed sheds little light on whether or not the defendants had the

conditional intent to seriously harm them if they re-
sisted. More relevant to the inquiry is that Willis
pointed a loaded gun at Darrick's head and told him
repeatedly that he would be killed if he did not comply.
As we have already discussed, this is overwhelming
evidence of Willis's conditional intent to cause serious
harm. *See id.* (sufficient evidence to establish con-
ditional intent where one defendant pointed a gun at
driver and instructed him to do as ordered and stated,
"or I'll shoot you").

And Carter was only a few feet away from Willis the
entire time, actively assisting Willis in the criminal en-
deavor. Carter knew that Willis would be using a
handgun during the carjacking—Carter warned that it
was "stick-up time" as soon as he approached the
Andersons' vehicle. Moreover, as Willis was pointing
the handgun at Darrick's head and warning Darrick that
he would be killed, Carter continued his role in the
carjacking by taking the couple's belongings, including
the keys to their vehicle so that he and Willis could
make their escape. Given their close proximity and the
fact that Carter continued to aid Willis while he had a
gun pointed at Darrick's head, there was more than
sufficient evidence that Carter shared Willis's condi-
tional intent at the time. *See United States v. Vallejos*, 421
F.3d 1119, 1125-26 (10th Cir. 2005) (sufficient evidence
to establish requisite intent for aiding and abetting a
carjacking where defendant stood within one foot of co-
defendant as co-defendant brandished a firearm and
ordered victim out of vehicle). Accordingly, the district

court did not abuse its discretion in giving the aiding and abetting instruction.

*B.  Sufficiency of the Evidence*

Both defendants next claim that there was insufficient evidence to support the jury's verdict for the carjacking offense. A defendant who challenges the sufficiency of the evidence faces a daunting standard of review. In considering such a challenge, we view "the evidence in the light most favorable to the Government, defer[ ] to the credibility determination of the jury, and overturn[ ] a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Perez*, 612 F.3d 879, 885 (7th Cir. 2010).

The indictment charged Willis and Carter with carrying a specific firearm to commit the carjacking—a Ruger .22 caliber pistol bearing serial number 63-40441. Because the government charged the defendants with using the specific Ruger pistol, rather than using an indictment drawn in more general terms, there must be sufficient evidence for the jury to conclude that the defendants used the Ruger pistol (and not just any firearm) during the carjacking. *See United States v. Leichtnam*, 948 F.2d 370, 380-81 (7th Cir. 1991) (indictment impermissibly broadened where defendant was charged with carrying a Mossberg rifle, but two additional handguns were put into evidence and jury instructed it could convict on proof that defendant carried "a fire-

arm"). *But see United States v. Guidry*, 406 F.3d 314, 322 (5th Cir. 2005) (no constructive amendment where indictment alleged that defendant possessed a "9mm Kurz" but evidence at trial indicated defendant possessed a ".380-caliber pistol").

A little more than an hour after the carjacking, Carter handed a Ruger pistol to Latham outside of the gas station where the defendants were eventually arrested. Latham refused to take it and instead put the gun back inside Chew's van, where it remained until it was discovered by police officers a short while later. Although the defendants were seen with a handgun during the carjacking, they contend that the evidence was insufficient to establish that the firearm used to commit the carjacking was the Ruger pistol later recovered from Chew's van.[2] We disagree.

The evidence was sufficient to allow the jury to infer that the Ruger pistol was used in the carjacking. Both of

---

[2] The defendants seem to confuse the issue, arguing that "the important point is that a reasonable jury could easily have concluded that the weapon [used in the carjacking] was not the same weapon [recovered from Chew's van]." (Appellants' Reply Br. at 13.) Contrary to the defendants' assertion, it is inconsequential whether or not it would have been reasonable for the jury to reach a different conclusion—it did not. The important question is whether "no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt," *United States v. Taylor*, 637 F.3d 812, 815 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 257 (2011), a significantly more difficult threshold to meet.

the Andersons testified that Willis used a handgun during the carjacking. From there, the defendants fled (while being tracked by GPS), first in the Andersons' Explorer, and then in Chew's van. Soon after, Garcia testified that Carter used a handgun during his robbery, which was corroborated by testimony from Latham. Latham also testified that Carter returned to the van carrying the same gun and that Latham placed the gun on the floor of the van—where it was later recovered by police—after refusing to take possession of it. It was reasonable for the jury to conclude that the handgun in the van was the same handgun the defendants used earlier that night to commit the carjacking. And although the defendants point to discrepancies between each of the Andersons' description of the gun and the Ruger pistol identified in the indictment, we do not reweigh evidence on appeal; "[r]esolution of this sort of evidentiary inconsistency is exclusively for the jury." *United States v. McLee*, 436 F.3d 751, 759 (7th Cir. 2006).

## C. *Joinder of Offenses*

Carter and Willis next contend that their respective felon-in-possession counts (Count Three as to Willis and Count Four as to Carter) should not have been tried together with their counts relating to the carjacking. They argue that joinder was improper under both Rules 8 and 14 of the Federal Rules of Criminal Procedure, and we address each argument separately.

### 1. *Misjoinder*

The defendants claim that their felon-in-possession counts were improperly joined[3] under Rule 8(b)[4] of the

---

[3] As an initial matter, the government contends that the defendants waived this claim by arguing only misjoinder of defendants in the district court, rather than offense misjoinder. We find no merit to this contention, however, because the defendants clearly raised offense misjoinder in the district court. *See* Carter's Mot. to Sever Count Four and to Exclude Evidence at 3-4 (arguing that Count Four "must be severed from the remaining three charges").

[4] The government also argues that the defendants' claim is properly analyzed under Rule 8(a), which governs joinder of offenses, rather than Rule 8(b), which governs joinder of defendants. Generally, courts have held that when multiple defendants are tried together, the joinder of counts is governed by Rule 8(b) rather than Rule 8(a). 1A Charles Alan Wright et al., *Federal Practice and Procedure* § 144, at 53 (4th ed. 2008 & Supp. 2012). We too have stated that "[w]hen two or more defendants are charged in a single indictment, Rule 8(b) governs joinder of defendants and offenses." *United States v. Cyprian*, 23 F.3d 1189, 1193 (7th Cir. 1994). But we have also not applied this rule consistently. *See United States v. Ross*, 510 F.3d 702, 710-11 n.2 (7th Cir. 2007) (collecting cases). In any event, we need not resolve this discrepancy because the outcome remains the same either way. Because joinder was proper under Rule 8(b), it necessarily would also be proper under Rule 8(a). *See United States v. Moya-Gomez*, 860 F.2d 706, 766 (7th Cir. 1988) (noting that Rule 8(a) is more permissive because it allows joinder when the offenses

(continued...)

Federal Rules of Criminal Procedure because they bear no relation to the other counts of the indictment. "We review claims of misjoinder de novo based on the allegations on the face of the indictment, not the proofs at trial." *United States v. Hosseini*, 679 F.3d 544, 552 (7th Cir. 2012). Courts liberally construe joinder rules in order to promote judicial efficiency, "limit inconvenience to witnesses, and allow the 'total story' to be presented to a single jury." *United States v. Warner*, 498 F.3d 666, 699 (7th Cir. 2007). Rule 8(b) permits joinder when the counts are logically related, *United States v. Cavale*, 688 F.2d 1098, 1106 (7th Cir. 1982)—that is, when the counts arise from "the same series of acts or transactions," Fed. R. Crim. P. 8(b).

The indictment's allegations clearly indicate that the felon-in-possession counts are logically related to, and are part of the same series of acts as, the carjacking counts. The felon-in-possession counts allege that Willis and Carter, respectively, possessed the same Ruger pistol as that used to commit the carjacking, within one day of the carjacking.[5] It would be a waste of judicial resources to conduct a separate trial for the felon-in-

---

[4] (...continued)

are of the same or similar character, whereas Rule 8(b) does not); *accord United States v. Jimenez*, 513 F.3d 62, 82-83 (3d Cir. 2008).

[5] Because the carjacking occurred at about 11:00 p.m. on June 23, and Carter was only seen in possession of the Ruger pistol after midnight, the indictment alleged that Carter possessed the gun on June 24.

possession counts when the same key evidentiary issue would be identical—the use and possession of the Ruger pistol on or about the time of the carjacking by each defendant. Indeed, we have already addressed whether there was sufficient evidence that a Ruger pistol was used in the carjacking—an evidentiary challenge that could be foreseen from the face of the indictment and ties directly into the felon-in-possession counts.

Moreover, the cases on which the defendants rely to argue that joinder was improper are materially different because none involved the same firearm or a close temporal connection. *E.g.*, *United States v. Hawkins*, 589 F.3d 694, 703-04 (4th Cir. 2009) (felon-in-possession count improperly joined with two carjacking counts under Rule 8(a), where the defendant was arrested possessing a different firearm seventeen days after the last carjacking); *United States v. Holloway*, 1 F.3d 307, 310-11 (5th Cir. 1993) (felon-in-possession count improperly joined with armed robbery counts under Rule 8(a) where the defendant was arrested possessing a different firearm two months after the robbery). Joinder of the offenses was proper.

## 2. Prejudicial Joinder

Finally, the defendants argue that even if joinder was proper under Rule 8, the district court should have severed the felon-in-possession counts under Rule 14 to avoid prejudice. *See United States v. Lanas*, 324 F.3d 894, 900 (7th Cir. 2003) (district court may grant

severance under Rule 14 even when joinder is proper under Rule 8). We review the district court's denial of severance under Rule 14 only for an abuse of discretion. *United States v. Del Valle*, 674 F.3d 696, 704 (7th Cir. 2012). We have described the Rule 14 standard as "exacting," apart from the deferential standard of review, because it is not enough for a defendant to show "that separate trials may have provided him a better opportunity for an acquittal*." United States v. Calabrese*, 572 F.3d 362, 368 (7th Cir. 2009) (internal quotation marks omitted). Rather, a defendant "must be able to show that the denial of severance caused him actual prejudice in that it prevented him from receiving a fair trial*." Id.* (internal quotation marks omitted). Even if the defendants can show prejudice, that alone may not necessarily suffice for them to prevail; limiting instructions will often cure any risk of prejudice, and tailoring relief from prejudice is within the district court's discretion. *Warner*, 498 F.3d at 700 (*citing Zafiro v. United States*, 506 U.S. 534, 539-41 (1993)).

Carter and Willis contend that they suffered prejudice for two related reasons. First, the felon-in-possession counts necessarily introduced evidence that each defendant had prior felony convictions. Each defendant stipulated that he had been convicted of a previous felony, and the jury heard no evidence concerning the nature of the prior felony or any factual details of the crime. Nonetheless, the defendants maintain that knowledge of their status as felons increased the risk that the jury reached its verdict because the defendants are "bad people," rather than on the basis of the evidence at trial. Second, the government used evidence

of the uncharged robbery of Jose Garcia in order to prove the felon-in-possession counts. The defendants argue that this evidence necessarily prejudiced the jury as to the remaining counts because the government was able to point to another robbery they committed that same night—inviting the jury to convict based on the defendants' propensity for crime.[6] Although the defendants highlight legitimate concerns, we nevertheless find that the district court did not abuse its discretion.

First, the evidence relating to the carjacking was overwhelming as to both Carter and Willis, so we are confident that the jury's verdict was not based on the defendants' status as felons or their propensity for armed robbery. *See United States v. Ross*, 510 F.3d 702, 711 (7th Cir. 2007) (finding it unlikely that jury convicted defendant based on prior status as felon where evidence was overwhelming). The evidence proving the carjacking was straightforward. The jury heard testimony that the defendants robbed the Andersons at gunpoint, and then escaped in the Andersons' stolen vehicle. Darrick identified Willis in a lineup, and Geraldine identified both defendants in court. The defendants' movements from the time of the carjacking through their

---

[6] In their reply brief, Carter and Willis seemingly go further and argue that the district court erred in admitting evidence of Garcia's uncharged robbery even with respect to their felon-in-possession counts. Because the defendants raise the issue for the first time in their reply brief, that argument is forfeited. *Mathews-Sheets v. Astrue*, 653 F.3d 560, 563 (7th Cir. 2011).

arrest were tracked by GPS, thanks to Geraldine's stolen cell phone—which Carter also used to call his mother in between robberies. Their movements were also verified through a number of red-light cameras along their route, and video surveillance footage taken both from the gas station where they first entered Chew's van, as well as from the gas station where the defendants were eventually arrested. And the evidence was particularly overwhelming as to Carter, who confessed as to his involvement in the carjacking prior to trial.

Moreover, the defendants ignore the fact that the evidence of Garcia's robbery was admitted not only for the felon-in-possession counts, but also as circumstantial evidence of the defendants' possession of the Ruger pistol for the remaining counts of the indictment. As we have already discussed, the defendants contested whether the Ruger pistol was the same firearm used to commit the carjacking. The use of that firearm during Garcia's robbery, roughly an hour after the carjacking, is strong circumstantial evidence of the defendants' use and possession of the Ruger pistol earlier that night. Accordingly, the district court admitted evidence of Garcia's robbery as to all four counts of the indictment under Federal Rules of Evidence 404(b). *Cf. United States v. Miller*, 673 F.3d 688, 695 (7th Cir. 2012) (defendant's possession of a gun two months prior to arrest was admissible under Rule 404(b) as circumstantial evidence of his later possession of the same gun). The defendants cannot demonstrate prejudice because "evidence on the

severed counts would be admissible in the trial of the remaining counts." *United States v. Quilling*, 261 F.3d 707, 715 (7th Cir. 2001).

Finally, any prejudice the defendants may have suffered was properly mitigated by the district court's limiting instructions. For example, the jury was instructed to consider each defendant's felon status only for purposes of the felon-in-possession counts, and not for any other purpose. We must presume that the jury followed these instructions. *Ross*, 510 F.3d at 711. Given the overwhelming evidence and the district court's limiting instructions, we find that the defendants suffered no prejudice. *See id.* (no prejudice from joinder of felon-in-possession count in light of overwhelming evidence of guilt and district court's limiting instruction); *United States v. Stokes*, 211 F.3d 1039, 1042-43 (7th Cir. 2000) (no prejudice from joinder of felon-in-possession count where stipulation provided only that defendant had been convicted of a crime punishable by more than one year imprisonment, and district court gave limiting instruction).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the convictions of both Carter and Willis.