In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3895

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES BOWLING,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 12-CR-00149— **Larry J. McKinney**, *Judge.*

ARGUED SEPTEMBER 26, 2014 — DECIDED NOVEMBER 7, 2014

Before FLAUM, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* James Bowling was convicted of two counts of making false statements in connection with the purchase of a firearm under 18 U.S.C. § 922(a)(6). Bowling argues that he deserves a new trial because the trial court made three errors: it prevented him from asserting a mistake-of-fact defense; it refused to require the government to enter into a stipulation; and, it failed to submit the issue of materiality to the jury. We hold that the trial court violated Bowling's due

process right to present a mistake-of-fact defense and remand for a new trial.

## I. Background

On December 15, 2011, a prosecutor in Rush County, Indiana charged James Bowling with strangulation, battery, and two counts of contributing to the delinquency of a minor. The strangulation charge constituted a felony, while the others were misdemeanors. Bowling made his initial appearance on February 9, 2012, where he was informed that he faced potential imprisonment exceeding one year for the strangulation charge as it was a Class D felony.

Bowling's trial was originally set for the beginning of July 2012, but did not proceed as scheduled. At some point in the first half of July, the matter was continued when the prosecutor extended a plea offer to Bowling's counsel to dismiss the felony count against Bowling in exchange for a plea of guilty to misdemeanor offenses. Approximately three months later, on October 23, 2012, Bowling pleaded guilty to disorderly conduct—a new misdemeanor charge—in exchange for the dismissal of all other state charges against him.

On July 14, 2012, prior to the guilty plea and while the charges were still pending, Bowling attempted to purchase a firearm from Fields Outdoor Adventures ("Fields"), a federally licensed firearms dealer in Rushville, Indiana. Per federal regulations, Bowling was required to fill out ATF Form 4473 ("Form 4473") before Fields could transfer possession of the firearm. The trial focused on two answers provided by Bowling. First, he answered "no" to question 11(b), which asked: "Are you under indictment or information in any court for a

felony, or for any other crime, for which the judge could imprison you for more than one year?" Second, in the "Current Residence Address" block, Bowling provided a former address that was listed on his driver's license and where he maintained an office, but no longer resided. Before completing the paperwork, Bowling certified that his answers were correct.

Based upon these answers, the government filed a superseding indictment on June 4, 2013, charging Bowling with two counts of making a false statement in connection with the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6).[1] Prior to trial, Bowling filed a motion in limine to preclude the government from introducing the charging information and the transcript of the February 9, 2012 initial hearing. Instead, Bowling offered the following stipulation:

> *James Bowling stipulates that on February 9, 2012, he was formally advised that he had been charged under an Information with one count of a D felony that carried a possible sentence of 6 months to three years imprisonment as well as three misdemeanors in the case of State of Indiana v. James Bowling, Cause Number 70D01-1112-FD-807, in Rush County, Indiana.*

The government rejected the stipulation because it did not stipulate that Bowling had knowledge of the felony charges pending against him at the time that he attempted to purchase the handgun, a required element under the statute. At the

---

[1] The government also charged Bowling with receipt of a firearm while under indictment in violation of 18 U.S.C. § 922(n), but moved to dismiss this charge prior to trial.

hearing on the motion in limine, Bowling offered to accept a stipulation that he knew he was under felony information at the time of the initial hearing, but would not go so far as to admit that he knew that the felony was still pending at the later date when he filled out Form 4473. Bowling also argued that, if evidence regarding the charges for strangulation or contributing to a delinquency of a minor were introduced, he should be able to rebut such evidence with evidence that he was never convicted of such charges, and that the sole conviction to arise from the charges was a misdemeanor for disorderly conduct.

The court rejected Bowling's arguments. At trial, the government introduced a recording of the initial hearing, which included allegations that Bowling strangled a minor by "wrapping his arm around the neck and cutting off the airflow of 'R.A.S.' with a birthdate of, July 5, 1995." (Case No. 1:12cv149-LJM: Tr. at 17; ECF Doc. 76-2 at 5-6.) Additionally, the jury heard allegations that Bowling induced the minor "to consume alcoholic beverages in his home." *Id.* at 7.

The Rush County Prosecutor, Phillip Caviness ("county prosecutor"), testified for the government that he drafted the charging information against Bowling, including the felony charge for strangulation and the misdemeanor charges of contributing to the delinquency of a minor. Finally, he testified that all of the charges were pending against Bowling on July 14, 2012 when Bowling filled out Form 4473.

On cross-examination, Bowling's counsel sought to question the county prosecutor about the plea offer to dismiss the felony count. The government objected that this testimony was irrelevant. After the trial judge sustained the government's

objection, Bowling's counsel made an offer of proof in which the county prosecutor acknowledged that the trial in Bowling's state case had been scheduled for early July and that he had communicated a plea offer to Bowling's counsel whereby the state would dismiss the felony count in exchange for Bowling pleading guilty to a misdemeanor offense. The jury never heard this testimony.

The second count charged in the information addressed Bowling's false statement about his residential address. During closing argument, defense counsel argued that Bowling did not intend to deceive Fields by supplying the address listed on his driver's license, as he maintained an office at this address and received bills and other mail there. Further, the proximity of the given address to Bowling's residence (two blocks apart), and the small, rural nature of the town of Manilla, Indiana (population 267 according to the 2010 census), meant that Bowling was neither intending, nor likely, to deceive Fields regarding his actual residence.

Perhaps anticipating an argument from the defense that the false address provided by Bowling was not material, the government sought an instruction that a false statement was material as a matter of law. Noting that it was unusual for a "trial judge in a jury case to instruct the jury that one of the elements is good … ," (Tr. at 164), the judge ultimately gave an instruction that: "A false street address is material to the lawfulness of the sale of a firearm."

The jury convicted Bowling on both counts and he was sentenced to twenty-one months' imprisonment on each count, to be served concurrently. Bowling appeals.

## II. Analysis

### A. Mistake-of-fact defense

We review a district court's ruling on the admission or exclusion of evidence for abuse of discretion. *United States v. Jumper*, 497 F.3d 699, 703 (7th Cir. 2007). For a question of law, we review *de novo* whether an evidentiary ruling had the effect of infringing upon a defendant's constitutional rights. *Id*. If we find a constitutional error in an evidentiary ruling, we reverse unless the error is harmless. *Chapman v. California*, 386 U.S. 18, 22 (1967).

To sustain a conviction that a defendant violated § 922(a)(6), the government must establish (1) that the defendant knowingly made a false statement to a licensed firearms dealer, (2) that the false statement was made in acquisition of a firearm, and (3) that the false statement was intended or likely to deceive the firearms dealer with respect to any fact material to the lawfulness of the sale of the firearm. *See United States v. Dillon*, 150 F.3d 754, 759 (7th Cir. 1998).

Where the intent of the accused is an ingredient of the crime, its existence is a question of fact, which must be submitted to a jury. *Morissette v. United States*, 342 U.S. 246, 274 (1952). A mistake-of-fact defense relieves a person of criminal liability where a reasonable mistake of certain facts means that the person did not have the culpable mental state required for the commission of the offense. 1 WHARTON'S CRIMINAL LAW § 78 (15th ed.). To that end, § 922(a)(6) requires that the government establish that the defendant acted "knowingly," meaning that Bowling *knew* that his statement was false. *See Bryan v. United States*, 524 U.S. 184, 193 (1998) (holding that, unless otherwise

directed by the statute, "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense.").

Also, § 922(a)(6) requires the government to prove either that the defendant made the statement with the intent to deceive the firearms dealer, or that the statement was of such nature that it was likely to deceive the dealer. *See Dillon*, 150 F.3d at 759. Both the knowledge and specific intent elements require evidence relating to the state of mind of the defendant; more significantly, both may be negated by evidence that the defendant labored under an honest misunderstanding of the facts. *See Bryan*, 524 U.S. at 192 (holding that "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.") (internal quotation omitted). In either case, a mistake of fact on the part of a defendant— determined by the jury to be reasonable—can serve as a full defense to criminal liability.

At trial, Bowling's counsel sought to cross-examine the county prosecutor about whether he had communicated a plea offer before July 14, 2012, when Bowling filled out Form 4473. Although a witness for the government, the testimony of the county prosecutor presented facts relevant to a possible mistake-of-fact defense. Bowling did not contest the fact that, as of the initial hearing, he knew that he was under criminal information for a felony. His only possible defense to this charge was that some intervening event—in this case, a plea offer—caused Bowling to believe that he was no longer under a felony information, and that this mistaken belief was reasonable under the circumstances.

The government contends that the testimony from the prosecutor about whether he made a plea offer was irrelevant, or, if relevant, it was not necessary to obtain this testimony from him as only Bowling could testify about what he knew when filled out the form. We disagree. The county prosecutor's testimony presents a possible defense and thus is clearly relevant. *See* Fed. R. Evid. 401; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993) (holding that the basic standard of relevance under Rule 401 is "a liberal one."). Bowling does not have to testify and should not be foreclosed from cross-examining the county prosecutor simply because he could personally say what he knew. Knowledge, or its absence, may be proved by all the facts and circumstances of the case. *See United States v. Craig*, 178 F.3d 891, 895 (7th Cir. 1999). Where cross-examination of a witness produces facts necessary to establishing a defense, the defendant may choose to rely on that testimony without having to testify himself. This is a strategic determination to be made by the defendant and his counsel. Here, the record suggests that only three persons could have testified concerning whether a plea offer had been communicated to Bowling: the county prosecutor, Bowling's state counsel, and Bowling. Obviously, neither Bowling's counsel, nor Bowling, should have to testify where the prosecutor is available as a witness. A jury is most likely to regard his testimony as objective as he does not have a personal interest in the outcome of Bowling's federal case. Clearly the county prosecutor was the logical source for such testimony.

"The rights to confront and cross-examine witnesses and call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S.

284, 294 (1973). Among Bowling's due process rights is the right to cross-examine the county prosecutor (or to call him as a defense witness) in order to obtain his testimony concerning any facts relevant to the case. Having made the requisite showing, Bowling had the right to develop the mistake-of-fact defense and to present it to a jury. A "defendant in a criminal case is entitled to have the jury consider any theory of defense which is supported by law and which has some foundation in the evidence, however tenuous." *United States v. Grimes*, 413 F.2d 1376, 1378 (7th Cir. 1969). For these reasons, the trial court infringed upon Bowling's constitutional rights in preventing him from developing a mistake-of-fact defense.

The Supreme Court recognizes two classes of constitutional violations that occur during a criminal proceeding: trial errors and structural defects. *Arizona v. Fulminante*, 499 U.S. 279, 307–10 (1991). A trial error, such as the one here, is an error that may "be quantitatively assessed in the context of other evidence presented," and is subject to harmless-error analysis. *Id.* at 307–08. The test for whether an error is harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24. An alternative wording for this inquiry is whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

The government contends that the exclusion of the relevant testimony from the county prosecutor was harmless as there had been no other testimony that Bowling was aware of the

existence of a plea offer. Still, Bowling had satisfied the low threshold to establish a foundation for the mistake-of-fact defense. Detrimental reliance on second-hand information may be a weak defense, but it is one recognized by law; given the facts of this case, it appears to be the only defense Bowling had for one of the counts. For this reason, we cannot say beyond a reasonable doubt that a jury would still have found him guilty had the defense been able to cross-examine the county prosecutor and develop this defense in full.

### B. Stipulation

In evaluating whether the district court also erred by not requiring the government to enter into a stipulation, our analysis is guided by two precedential decisions. First, in *Old Chief v. United States*, the Supreme Court reviewed a conviction under 18 U.S.C. § 922(g), which prohibits possession of a firearm by anyone with a prior felony conviction. 519 U.S. 172 (1997). In *Old Chief*, the defendant had a prior felony conviction for an assault causing serious bodily injury. Rather than risk having the jury hear facts likely to prejudice them against the defendant, the defendant offered to concede, via stipulation, his status as a felon during the relevant period. *Id.* at 176–77. The government refused, and the trial and appellate courts agreed. *Id.* at 177. The Supreme Court did not. Instead, it held it to be an abuse of discretion for a trial court to allow the government to establish a predicate felony by means of unfairly prejudicial evidence, where the defendant has offered a stipulation that serves as the equivalent to such evidence.

In *United States v. Phillippi*, 442 F.3d 1061 (7th Cir. 2006), we addressed whether the government was required to enter into

a similar stipulation under 18 U.S.C. § 922(a)(6). In *Phillippi*, the defendant purchased a gun while under criminal information for multiple felonies. He offered to stipulate to the existence of one criminal information to preclude the government from introducing relevant testimony from the initial hearing. Significantly, however, the defendant in *Phillippi* refused to stipulate that he knew that he could be imprisoned for more than one year as such stipulation would amount to a guilty plea. Absent a stipulation, the government elicited trial testimony from court reporters who read into the record portions of the transcripts involving colloquies on two of the felony charges. We affirmed the decision to allow the government to introduce evidence related to the felony charges, and distinguished the facts from those in *Old Chief*, which the Supreme Court deliberately limited to cases involving proof of felon status. *Phillippi*, 442 F.3d at 1064. As § 922(a)(6) requires proof that the defendant "knowingly" made a false statement to a licensed firearms dealer, it contains an "additional purpose" beyond merely proving the status of the defendant as required under § 922(g). *Id*.

Our holding in *Phillippi* directs a similar result in this case. Like *Phillippi*, Bowling is willing to concede that he was under a criminal information, but not that he was aware of this when he filled out Form 4473. The factual distinctions between the cases are of no moment (Phillippi contended that it was never communicated to him that the charges were felonies, while Bowling maintained that later plea discussions cast doubt upon his knowledge). Where the defendant claims a lack of knowledge that he had been charged with a felony, it is only proper to allow the government to offer those facts relevant to

establish that the defendant had or should have had such knowledge. Because Bowling's knowledge (or lack thereof) was directly in question, the trial judge did not abuse his discretion in allowing the government to prove the underlying felony charge rather than stipulate to it.

To recognize, however, that *Old Chief* is not an exact fit for § 922(a)(6) is not to say that it offers no guidance at all. Like former convictions, felony indictments (or informations) present a high risk of unfair prejudice to the defendant. *See Old Chief*, 519 U.S. at 181 ("Although … 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance.") (internal quotation omitted). This means that a court should make every effort to redact or exclude any information not relevant to the charge for which the defendant stands trial. To allow the government to offer evidence to prove the predicate felony charges does not dispense the court from its gate-keeping function to exclude irrelevant evidence that is of negligible probative value and is unfairly prejudicial to the defendant.

For this reason, we see no reason why evidence that Bowling strangled or gave alcohol to a minor should have been presented to the jury. "The amount of prejudice that is acceptable varies according to the amount of probative value the evidence possesses. '[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th

Cir. 2012) (quoting *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008)). Although district courts have "wide discretion in admitting and excluding evidence," *Thompson v. City of Chicago*, 722 F.3d 963, 971 (7th Cir. 2013), this discretion does not extend so far as to allow for the inclusion of prejudicial evidence having little or no bearing on any fact of consequence to the case. At a minimum, having allowed the jury to hear such evidence, the court should have permitted the defense to lessen the sting by presenting evidence that Bowling eventually pleaded to a misdemeanor crime for disturbing the peace.

### C. Materiality of false address

Because we remand this case on other grounds, we need not determine whether the trial court erred in instructing the jury that a false address was material as a matter of law. We write only to sort out potential confusion in light of the government's arguments at trial (and the district court's reliance on those arguments) about the implication of our holding in *United States v. Queen*, 408 F.3d 337 (7th Cir. 2006). In that case, the defendant argued that a false address was not sufficient to support an indictment as it was, per se, not material unless the government first proved the buyer was not a resident of same state as the dealer. The trial judge disagreed and found the false address to be material. We affirmed. In so holding, we recognized that a false address was material in that case, and that it was sufficient to support an indictment irrespective of the state of residence of the buyer. Our holding never went so far as to declare that providing a false address, in every case, is material as a matter of law. *Id*. at 338–39.

### III. Conclusion

Because the trial court infringed upon Bowling's right to solicit testimony relevant to a mistake-of-fact defense, and because this error was not harmless, we remand this case for a new trial.