In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 14-2317

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THADDEUS BANIA,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:07-cr-00580-6 — **Charles P. Kocoras**, *Judge.*

_____

ARGUED FEBRUARY 11, 2015 — DECIDED JUNE 4, 2015

_____

Before FLAUM, WILLIAMS, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Four years after the imposition of his sentence, Thaddeus Bania filed a motion with the district court, challenging the propriety of the sentencing judge's restitution order. Because the district court lacked jurisdiction to hear Bania's motion and the time to appeal his sentence has long passed, we affirm the court's denial of the motion.

## I. Background

Thaddeus Bania stands convicted of eleven criminal counts due to his part in an effort to rig a union election. In 2004, Bania and several cohorts schemed to ensure the reelection of two leaders of Local 743 of the International Brotherhood of Teamsters—a labor organization composed of 12,000 members working for roughly 150 employers in Northwest Indiana and the Chicago metro area. Section 481 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 481, requires local labor organizations at least once every three years to elect their officers by secret ballot. The statute bestows the right to vote for the candidate of his choice to every member of the organization in good standing.

Local 743's election for the 2005–2007 term was scheduled to be held in October 2004. Beforehand, Bania and Local 743's president Robert Walston sought to manipulate the voting to ensure victory for Walston and incumbent Recording Secretary Robert Lopez—both of whom ran for office, along with five others, on the election ticket referred to as the "Unity Slate." To fix the election, Bania and Walston diverted ballots from legitimate union members (careful only to target members who had not voted in the previous election) by changing members' mailing addresses in the Local 743 database to addresses supplied to them by fellow union employees and future co-defendants David Rodriguez and Cassandra Mosley. Bania and Walston then collected the misdirected ballots and cast falsified votes for the Unity Slate. In total, they diverted 150 ballots, 118 of which ultimately were cast and counted.

Walston's opponent in the presidential election, Rich-ard Berg of the opposing ticket (known as the "New Leadership Slate"), seems to have sensed foul play, be-cause he lodged several protests with the Local 743 Exec-utive Board during the course of the election. One such protest concerned the fact that Bania had illegally ob-tained a key to the union's "undeliverable" mailbox at the post office, prompting the election officer to quarantine 86 votes and halt the vote tally. An additional 188 ballots had been challenged for a variety of reasons and, conse-quently, also went uncounted. Prompted by the suspi-cious voting activity, the Board voted to void the results and re-run the election. Walston—who, despite his and Bania's efforts, was losing to Berg by 7 votes after all un-challenged ballots had been tallied—sensed defeat for the Unity Slate, and so he backed the decision to have a do-over. The Board scheduled a new election to be held two months later, in December 2004.

Undeterred, Bania and Walston employed the same fraud scheme during the second election. This time, the pair doubled back and corrected the addresses of the 150 members whose ballots they had diverted for the October election, and instead redirected the ballots of 157 fresh targets (again choosing union members with a history of truancy at the polls). They also obtained an indetermi-nate number of votes by providing to the election officer false addresses for members whose ballots had been re-turned undeliverable in the October election, and by placing fake phone calls to the election officer in order to obtain duplicate ballots at false addresses for certain un-ion members. The entirety of Walston's Unity Slate won

the December election, comfortably beating the New Leadership Slate by 394 votes.

A grand jury indicted Bania and four others—including Walston, Lopez and Rodriguez—for their fraudulent activity. As to Bania, the March 6, 2008 superseding indictment comprised one count of conspiracy to commit mail fraud and theft from a labor organization (in violation of 18 U.S.C. § 371), four counts of mail fraud (in violation of 13 U.S.C. § 1341 and 1346), and six counts of embezzling, stealing, and unlawfully and willfully abstracting and converting property and other assets of a labor organization (in violation of 29 U.S.C. § 501(c)). Following an eighteen-day trial, a jury convicted Bania on May 1, 2009.

On August 27, 2009, the district court sentenced Bania to concurrent 40-month terms of imprisonment on each count (a departure from the low-end of the guidelines—97 months), followed by a two-year term of supervised release. In addition, the court ordered Bania to pay $900,936 in restitution to Local 743, and to pay a special assessment of $1,100. On the theory that Bania's conduct deprived the union of honest services, the restitution amount reflected the salaries paid to Walston and Lopez ($864,924),[1] plus the expenses incurred by the union to hold the December re-election ($36,012). The court im-

---

[1] At sentencing, the government argued that Bania's restitution amount should reflect the salaries of all seven members of the Unity Slate who won office. The court, however, rejected the government's position, finding that Bania only sought to have two of those members—Walston and Lopez—elected and, thus, his conduct only deprived the union of the honest services of those two ticket members.

posed a concurrent forfeiture obligation on Bania in the amount of salary and benefits paid to Walston and Lopez. Bania and his co-defendants were held jointly and severally liable for the payment of the restitution and forfeiture amounts.

Bania did not appeal his sentence or conviction. But, on July 2, 2010 (over ten months after the imposition of his sentence), he did file a 28 U.S.C. § 2255 motion, alleging ineffective assistance of counsel and accusing his lawyer of disregarding Bania's instruction to file a timely notice of appeal. The district court conducted an evidentiary hearing and concluded that, contrary to Bania's claim, Bania knowingly declined to appeal after being advised by his attorney of his right to do so.

On November 28, 2012, Bania completed his prison term and began serving his term of supervised release. Less than a year later, on October 13, 2013, Bania filed a pro se motion for early termination of supervision pursuant to 18 U.S.C. § 3583(e)(1), arguing that his compliance with the terms of his release warranted such relief. The district court denied Bania's motion in view of his outstanding financial obligation. (At the time, more than $635,000 of Bania's restitution order remained unpaid.)

Bania appealed the district court's denial of his motion for early termination of his supervised release. On appeal, however, Bania did not actually challenge the district court's rationale for denying his motion. Instead, he argued that at sentencing (which, at that point, had taken place more than four years earlier) the district court improperly calculated the restitution amount that it ordered him to pay. In Bania's view, the district court arrived at its

restitution figure by improperly totaling the loss he intended to cause the union, rather than the loss he actually caused. Without oral argument, we issued an order concerning Bania's appeal on April 18, 2014. In it, we noted that Bania's challenge to the restitution amount was untimely—Federal Rule of Appellate Procedure 4(b) required Bania to file a notice of appeal within fourteen days of the entry of judgment. And we affirmed the district court's decision not to prematurely terminate Bania's supervised release in order to ensure repayment to Bania's victims. *United States v. Bania*, 562 F. App'x 528, 529 (7th Cir. 2014).

On January 15, 2014, while that appeal was pending, Bania filed a motion with the district court captioned "Motion to Terminate Order of Restitution and Order of Forfeiture." Bania again advanced the argument that the district court erred by ordering the payment of restitution and the forfeiture of assets in an amount based on intended rather than actual loss. In light of our April 18, 2014 order, the district court denied Bania's motion. Bania then appealed the district court's decision to deny his motion, and it is that appeal that is before us now.

## II. Discussion

On appeal, Bania continues his quest to prove that the district court ordered restitution without determining whether Local 743 suffered any actual loss as a result of the illegal voting scheme. But, as we pointed out in Bania's first appeal, he embarked on this quest far too late. Bania had just 14 days to file a notice of appeal if he wished for us to review the district court's restitution order. Fed. R. App. P. 4(b). At oral argument, Bania was

questioned about his decision not to do so, and his response was puzzling. Initially, he suggested that he refrained from appealing out of a fear that he would invoke the ire of the sentencing judge and receive more incarceration than he otherwise would have. When pressed about the illogic of that position (notices of appeal are, of course, filed after the district judge's issuance of final judgment), Bania backtracked, acknowledging that he made the decision not to appeal after he and his lawyer discussed the potential merit of his restitution argument and "how much it would cost" to bring the appeal. But whatever his reasons, Bania consciously chose not to take a direct appeal, and his time to do so has long passed. *United States v. Rollins*, 607 F.3d 500, 501 (7th Cir. 2010) (Rule 4(b)'s 14-day time limit "is mandatory, and we must enforce it when the appellee stands on its rights (as the United States has done)."); *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007) ("[A] criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all."); *United States v. Hook*, 471 F.3d 766, 771 n.1 (7th Cir. 2006) ("Because restitution was part of his original sentence, any challenge to that order needed to be made on direct appeal … .").

Bania represented at oral argument that it was only after he, years later, learned that his co-defendant Rodriguez successfully challenged his own restitution order—a notion that we'll revisit below—that he decided to take action and file the motion at issue here. But that action, too, was untimely. The government correctly points out that the court lacked jurisdiction to entertain Bania's mo-

tion,[2] and thus properly denied it. Although Bania's pro se motion did not invoke a specific procedural rule, Federal Rule of Criminal Procedure 35 governs motions—like Bania's—to correct or reduce an allegedly clear error in a defendant's sentence. Rule 35(a) dictates that "[w]ithin 14 days after sentencing, [a district court] may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).[3] This "time limit is jurisdictional," *United States v. Wisch*, 275 F.3d 620, 626 (7th Cir. 2001), and so the four-and-a-half years Bania waited before acting rendered the district court powerless to hear his Rule 35 motion. *See United States v. Baldwin*, 414 F.3d 791, 797 (7th Cir. 2005) ("The Supreme Court has held that [Rule 35] operate[s] to deprive the court of authority to act after the time period specified in the rule has elapsed."), *overruled on other grounds by United States v. Parker*, 508 F.3d 434, 435 (7th Cir. 2007).

At oral argument Bania urged us to alter his sentence by invoking the Mandatory Victim's Restitution Act ("MVRA").[4] But nothing in the MVRA permits the court

---

[2] We review the jurisdictional issue de novo. *United States v. De la Torre*, 327 F.3d 605, 608 (7th Cir. 2003).

[3] "Rule 35 was amended in 2002 as part of the general restyling and revision of the Federal Rules of Criminal Procedure. Under the 2002 amendments, former Rule 35(c) is now Rule 35(a)." *De la Torre*, 327 F.3d at 608 n.1.

[4] 18 U.S.C. § 3663(d) dictates that "[a]n order of restitution made pursuant to this section shall be issued and enforced in accordance with section 3664." Section 3664(o) then provides: "A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that—

to revisit the restitution order now. Moreover, no other statute or rule conferred jurisdiction on the district court to entertain Bania's belated motion. A 28 U.S.C. § 2255 motion, for instance, cannot be used as a vehicle for challenging the restitution component of a sentence. *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). And we have been clear that such motions are no substitute for a direct appeal. *Id.* Accordingly, the court's denial of Bania's motion was appropriate, and we affirm the district court's ruling.

With the merits decidedly out of our reach, we could end here. However, we feel that a certain amount of explanation is needed to alleviate the confusion (and resultant indignation) that Bania seemed to harbor at oral argument with respect to his outstanding restitution obligation. As mentioned, Bania cited the successful appeal of his co-defendant Rodriguez as the impetus for his challenge to the district court's order of restitution. Rodriguez advanced the same theory that Bania advocates here—that is, that the sentencing judge failed to calculate

---

(1) such a sentence can subsequently be—

 (A) Corrected under Rule 35 of the Federal Rules of Criminal Procedure and section 3742 of chapter 235 of this title;

 (B) Appealed and modified under section 3742;

 (C) amended under subsection (d)(5); or

 (D) adjusted under section 3664(k), 3572, or 3613A; or

(2) the defendant may be resentenced under section 3565 or 3614."

actual loss. And so, Bania believes that Rodriguez's appellate win lends credence to Bania's contention that his fraud scheme did not cause or facilitate the Unity Slate's election. That view is mistaken.

At the sentencing of Bania and Rodriguez, the government conceded that it only was able to attribute 157 falsified votes from the December election to Bania and his co-defendants. For that reason, Bania argues that he was at most responsible for a 314-vote swing in the results, and thus, that his fraud scheme did not dictate the outcome of the December election. As Bania rightly notes, restitution must be based on actual—not intended—loss. *See* 18 U.S.C. §§ 3663(a)(1)(B)(i)(I) and 3664(e).[5] Therefore, Bania contends that the district court's valuation of the honest services of which the election of Walston and Lopez deprived Local 743 reflects the loss that Bania *intended* to cause the union, since the government lacks proof that his conduct *actually* enabled their victory. By Bania's lights, $864,924 of his restitution order (the portion reflecting the salaries paid to Walston and Lopez during the 2005–2007 term) was imposed illegally. That view, however, ignores that Bania's actions spurred the abrogation of the October election—an election which Walston, at least, believed after one day of vote tallying

---

[5] "While for *sentencing* purposes 'loss' is defined as the greater of *either* the 'actual' or the 'intended' amount lost due to the fraud, for *restitution* purposes the [Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663] implicitly requires that the restitution award be based on the amount of loss *actually caused* by the defendant's offense." *United States v. Rhodes*, 330 F.3d 949, 953 (7th Cir. 2003) (emphases in original) (internal citations omitted).

spelled doom for him and Lopez. Bania's conduct triggered the December re-run, from which the Unity Slate emerged victorious. And so, even if we could reach the merits in this case, Bania's causation argument is not convincing.

Rodriguez's success on appeal does not alter that conclusion. The appellate docket in Rodriguez's case reflects that he (unlike Bania) timely appealed the imposition of his sentence on September 8, 2009. *See United States v. Rodriguez*, 10-2816, Dkt. No. 1-1. And, because of the nature of Rodriguez's role in the fraudulent scheme, his challenge to the restitution order had greater merit than Bania's. In Rodriguez's case, the government conceded what Bania makes much of here—that the district court did not make the necessary and appropriate findings concerning actual loss for restitution purposes at Rodriguez's (and thus Bania's) sentencing hearing. Instead, the government acknowledged, the district court focused its loss inquiry exclusively on the appropriate loss amount for sentencing enhancement purposes pursuant to Guideline § 2B1.1(b)(1)(I). The government therefore requested a limited remand to allow the district court to determine the actual loss (if any) caused by the defendants' scheme. Accordingly, we vacated Rodriguez's restitution order and remanded the case for additional findings. *See* Dkt. No. 39. That procedural defect at sentencing, however, has no bearing on whether, as a factual matter, the fraud scheme enabled the election of Walston and Lopez.

On remand (and this is a critical fact that Bania seemed not to fully appreciate at oral argument in this case), the government remained steadfast in its position

that the defendants caused the Unity Slate's election by virtue of their misconduct surrounding the October election. Yet, in an exercise of prosecutorial discretion, the government recommended that Rodriguez's new restitution order be limited to the amount which he had already paid—$3,217.80. In the government's view, this reduction—from his original restitution order of $864,924—was appropriate, among other reasons, because of Rodriguez's minimal role in the scheme. The court adopted the government's position and issued the new order.

All of this is to say that the reduction in Rodriguez's restitution order does not support Bania's view that *his* conduct did not cause the election of Walston and Lopez. The government's position all along has been that Bania and his co-defendants enabled the Unity Slate's victory. It only recommended a restitution reduction for Rodriguez because of his minor role in the fraud—a role so minor with respect to the October election, we note, that his initial restitution order (unlike Bania's) did not include the cost to the union of re-running the election. Different from Rodriguez, Bania was one of the scheme's kingpins, whose personal actions prompted the Board to halt the vote count, vacate the results, and conduct the re-run that ordained the Unity Slate's victory. For that reason, Bania's position that he did not divert enough votes in the December re-run to dictate the result of *that* election would not carry the day, even if the merits were within our purview.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.