In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2161

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANNAZETTE COLLINS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 21-CR-00199 — **Jorge L. Alonso**, *Judge.*

ARGUED SEPTEMBER 9, 2025 — DECIDED DECEMBER 18, 2025

Before ST. EVE, LEE, and KOLAR, *Circuit Judges.*

ST. EVE, *Circuit Judge*. After a career in the Illinois state legislature, Annazette Collins began evading tax liability. A jury found her guilty of failing to file tax returns and making false statements on her tax returns, and the district court sentenced Collins to one year of imprisonment and a year of supervised release. Collins now challenges her convictions on the grounds there was insufficient evidence her conduct was willful and the district court made erroneous evidentiary rulings

that violated the United States Constitution. She also claims the district court wrongly denied her motion to correct her sentence. We affirm.

## I. Background

### A. Factual Background

After over a decade of service in the Illinois state legislature, Collins began two main professional ventures in 2013. First, she started a lobbying and consulting firm named Kourtnie Nicole, Corp. ("KNC"), of which she was the sole owner and president. Collins drew from her legislative experience to advise businesses working closely with the Illinois state government. In her second venture, Collins sold life insurance for American Income Life Insurance Company ("AIL").

For at least the four calendar years preceding 2014, Collins annually filed individual tax returns. In her individual tax return for the 2013 calendar year, for example, she reported the roughly $33,000 she had paid herself from her consulting business. Collins also signed and authorized the filing of KNC's corporate tax return, which reflected the same compensation to Collins.

In subsequent years, Collins began to significantly underreport her personal income or entirely fail to file a tax return. For the 2014 calendar year, Collins earned about $118,000 in total income, reflecting about $96,000 from AIL and around $40,000 from her company, KNC. In her tax return for that year, however, Collins reported no income from AIL, and a total figure of only about $11,500. In signing her 2014 return, she attested, as she did in other years, that under penalty of perjury the information was "true, correct, and

complete." Also in 2014, Collins discontinued her employment relationship with AIL; the company terminated her in September 2014 for fraudulently submitting insurance policies for individuals who did not apply for them or did not exist.

Collins continued her underreporting the following year. In her 2015 tax return, she represented her total income as only around $10,000 despite the actual figure approaching $84,000. Her actual total income reflected $75,000 she transferred from KNC to her personal accounts, deductions for work expenses, and over $11,000 in KNC funds used for personal expenses—including tuition for her daughter's private school and camp at SeaWorld. KNC had funds, too, taking in about $188,000 in 2015 in gross receipts.

Collins then failed to file any tax return—corporate or personal—for the 2016 calendar year. This was not for a lack of income. KNC itself earned $162,000 in gross receipts in 2016. Additionally, Collins transferred $50,000 from KNC to herself and spent over $18,000 of KNC's funds on personal expenses, including her daughter's summer camp and home mortgage payments. This added up to a gross individual income for Collins of approximately $70,000.

Collins's conduct did not escape the Internal Revenue Service. In 2016, the IRS issued Collins a notice of over $96,000 in unreported income stemming from the omission of AIL from her 2014 tax return, resulting in approximately $25,000 in outstanding tax liability. A few months after receiving this notice, Collins amended her 2015 individual tax return by incorporating her unreported AIL income into that return. Additionally, Collins paired the newly reported income with approximately $50,000 in newly claimed deductions, including nearly

$8,000 for "work clothes" and an almost ten-fold increase in her claimed business miles travelled, from around 3,000 to 22,000. These deductions effectively halved the tax liability created by her newly reported AIL income.

In 2017, Collins entered into a payment plan with the IRS to pay the roughly $25,000 in tax liability identified in the IRS's notice. Collins discontinued making payments in 2019, and by October 2023 she owed more than the amount originally assessed due to interest and penalties.

**B. Procedural Background**

A grand jury indicted Collins in March 2021. The superseding indictment, filed two months later, charged her with six counts: three counts under 26 U.S.C. § 7206(1) for making false statements in her individual income tax returns for calendar years 2014, 2015, and 2018; and three counts under 26 U.S.C. § 7203 for willfully failing to file a tax return, corresponding to her missing individual tax return for 2016 and her missing corporate tax return for calendar years 2015 and 2016.

In advance of trial, the government moved in limine to (1) preclude Collins from presenting evidence concerning her amended 2015 tax return or her 2017 payment plan, (2) admit evidence Collins was terminated by AIL for cause to show Collins was less likely to forget her AIL employment when submitting her 2014 return, and (3) exclude certain opinions from Collins's proposed expert witness that channeled Collins's own hearsay statements. The court granted the government's first motion, denied the second, and conditionally denied the third contingent on whether Collins ultimately testified as to the assertions upon which her expert would rely.

The case proceeded to trial. The government introduced evidence of Collins's earnings, the income she reported to third parties, records of her tax returns, and tax legislation she sponsored in 2008 that would raise the Illinois income tax rate. The government also presented testimony from Collins's tax preparer, Robert Burch, regarding his interactions with Collins and his business practices.

After the government rested its case and Collins indicated she would testify, the government raised its intention to inquire on cross-examination into details of Collins's allegedly fraudulent conduct at AIL as probative of her character for untruthfulness. The court, distinguishing this issue from its prior ruling on the government's second motion, overruled Collins's objection, and ultimately Collins decided against testifying. As her only witness, Collins offered an expert in forensic accounting. That accountant, Craig Greene, testified to errors in the government's calculation of Collins's tax liability and opined that Collins's failure to file tax returns was due to her own tax preparer's "negligence."

After deliberations, the jury found Collins guilty of four of the six counts charged. These counts encompassed false statements in her tax returns for the 2014 and 2015 calendar years and failure to file a tax return in 2016 both for herself and on behalf of KNC. After trial, the district court denied Collins's motion for judgment of acquittal.

Subsequently, the district court sentenced Collins to one year's imprisonment and one year of supervised release. Five months later, Collins filed a motion to correct her sentence, requesting that the district court increase her term of imprisonment by one day so she could meet the minimum sentence for which a person is eligible for good-time credits, which

could reduce her time incarcerated. The district court denied this motion.

## II. Discussion

Collins first challenges the sufficiency of the evidence for each of her convictions.

She also appeals three of the court's evidentiary rulings. According to Collins, the district court abused its discretion and violated a constitutional right in each ruling. First, she challenges the exclusion of evidence of her amended 2015 tax return and her payment plan. Second, she disputes the decision permitting the government to inquire into details surrounding her fraudulent conduct that resulted in her termination from AIL. Third, she challenges the district court's ruling limiting the testimony of her expert.

Last, Collins challenges the district court's denial of her motion to correct her sentence. She argues the court erred by not stating its intention to give her a sentence immediately below the threshold beyond which she would be eligible for good-time credits.

### A. Sufficiency of Evidence

We begin with Collins's sufficiency challenge. Collins claims that there was insufficient evidence of her willfulness for a jury to find her guilty on each count.

We assess the sufficiency of the evidence de novo. *See United States v. Jackson*, 5 F.4th 676, 682 (7th Cir. 2021). We ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Leal*, 72 F.4th 262, 267 (7th Cir. 2023) (quoting *United States v. Faulkner*, 885 F.3d 488, 492 (7th Cir. 2018)). In

structuring our inquiry, "this court considers the evidence in the light most favorable to the Government, defers to the credibility determination of the jury, and overturns a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Perez*, 612 F.3d 879, 885 (7th Cir. 2010) (quoting *United States v. Huddleston*, 593 F.3d 596, 601 (7th Cir. 2010)). This standard, consistent with the "[g]reat deference … afforded to jury verdicts," imposes a "nearly insurmountable burden." *United States v. Beechler*, 68 F.4th 358, 368 (7th Cir. 2023) (quoting *United States v. Maldonado*, 893 F.3d 480, 484 (7th Cir. 2018)).

Though Collins's convictions span two different offenses, she acknowledges that the offenses share the same general willfulness requirement, proof of a "voluntary, intentional violation of a known legal duty." *United States v. Murphy*, 469 F.3d 1130, 1137 (7th Cir. 2006) (quoting *United States v. Pomponio*, 429 U.S. 10, 12 (1976)); *see also Perez*, 612 F.3d at 887 ("[W]illfulness, as construed by our prior decisions in criminal tax cases, requires the government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." (quoting *Cheek v. United States*, 498 U.S. 192, 201 (1991))). Of course, that requirement takes different forms corresponding to the specific conduct at issue. Section 7206(1) entails proving the "defendant signed the return willfully and knowing it was false," *United States v. Powell*, 576 F.3d 482, 495 (7th Cir. 2009) (quoting *United States v. Presbitero*, 569 F.3d 691, 700 (7th Cir. 2009)), whereas § 7203 requires proof Collins "acted willfully in failing to file," *United States v. Hassebrock*, 663 F.3d 906, 919 (7th Cir. 2011).

Viewing the evidence in the light most favorable to the government, there was more than sufficient evidence from which a reasonable jury could find Collins acted willfully.

Consider the evidence supporting Collins's convictions for false statements under § 7206(1). The government presented evidence Collins knew of her obligation to report her income because Collins had previously reported income from the same sources she later omitted. This, along with evidence of Collins's sophistication as a business owner and her sponsorship of tax legislation, permitted the jury to infer Collins understood her obligation to report her income accurately. *See United States v. Falk*, 605 F.2d 1005, 1010 (7th Cir. 1979).

The government also presented evidence that Collins intentionally violated this obligation. A substantial discrepancy existed between what Collins earned and what she falsely reported earning in her tax returns. The size of this disparity permitted a jury to infer Collins made false representations to avoid tax liability, making her conduct intentional. *See Perez*, 612 F.3d at 888**.** The jury also heard evidence isolating Collins as the source of the false information. Burch explained that Collins provided him the false information and that Collins verified the accuracy of the tax returns before ultimately authorizing their filing. This further supported Collins's willfulness in making false representations. *See id.*; *Powell*, 576 F.3d at 495. Finally, the government showed that Collins reported a higher income to third parties than what she reported to Burch and the IRS. This was more than enough to prove Collins acted willfully.

The government also presented compelling evidence regarding the counts under § 7203. As noted above, her historical filing of tax returns and her prior tax legislation and

business acumen as president and owner of her lucrative consulting business established that she knew of her obligation to submit a tax return. *See United States v. Briscoe*, 65 F.3d 576, 588 (7th Cir. 1995); *United States v. Bressler*, 772 F.2d 287, 291 (7th Cir. 1985) (evidence defendant was "sophisticated businessman" who advised others on tax liability indicated he understood his legal obligation to submit tax returns).

The jury had ample evidence indicating Collins intended to violate her legal obligation to file a tax return. Given Collins's history of filing returns, a jury could infer from the mere fact she did not file a tax return in 2016 that her violation was willful. *See Briscoe*, 65 F.3d at 588 ("[Defendant's] filing history demonstrated that he knew that he had an obligation to file and that he intentionally ignored that obligation."). In addition, Burch explained he did not advise Collins against filing a corporate tax return and that Collins never authorized him to file an individual tax return despite him preparing one for her. Burch also had an incentive to avoid responsibility for Collins's omissions because he only received payment if a tax return was filed and was paid more for corporate returns. Finally, the jury could infer from the substantial income Collins and KNC enjoyed in 2016 that Collins intentionally omitted submitting a return to avoid tax liability. *See United States v. Tishberg*, 854 F.2d 1070, 1073 (7th Cir. 1988).

Collins argues that the testimony of Burch lacked important details and damning assertions she willfully violated the law. She also claims that the evidence of her work on tax legislation required an impermissible "speculative leap" that she was as knowledgeable as a certified public accountant.

These arguments are not persuasive. Collins was entitled to use cross-examination to persuade the jury of flaws in

Burch's testimony, and at this stage "we will not second-guess the jury's credibility determinations." *Perez*, 612 F.3d at 886 (quoting *United States v. Olofson*, 563 F.3d 652, 659 n.6 (7th Cir. 2009)). Additionally, Burch's testimony did not need to provide direct evidence, such as an assertion Collins knowingly provided him false statements. Indeed, the government may prove its case through circumstantial evidence alone. *See United States v. Hills*, 618 F.3d 619, 639 (7th Cir. 2010). Similarly, Collins's sponsorship of legislation increasing the state income tax did not demand an impermissible inference. It helped establish that she was aware of the obligation to file tax returns. And we do not upset reasonable inferences on a sufficiency challenge. *See United States v. Nagelvoort*, 856 F.3d 1117, 1127 (7th Cir. 2017).

**B. Evidentiary Rulings**

Collins challenges three evidentiary rulings by the district court. "We review the district court's evidentiary rulings for an abuse of discretion." *United States v. Smith*, 150 F.4th 832, 847 (7th Cir. 2025). This standard recognizes that "[d]istrict judges have wide discretion over decisions to admit or exclude evidence," and we only find an abuse of discretion if "no reasonable person could take the judge's view of the matter." *United States v. Brown*, 871 F.3d 532, 536 (7th Cir. 2017). Furthermore, "a new trial is warranted only if the judge's error affected the defendant's substantial rights," that is, if "the average juror would have found the government's case significantly less persuasive had the wrongly excluded evidence been admitted." *Id.*; *see* Fed. R. Crim. P. 52(a). Collins also claims that the evidentiary rulings infringed on her constitutional rights. This presents a "separate question," one we review de novo. *United States v. Cox*, 54 F.4th 502, 514 (7th Cir.

2022). If we find a constitutional error, "we reverse unless the error is harmless." *United States v. Bowling*, 770 F.3d 1168, 1174 (7th Cir. 2014) (citing *Chapman v. California*, 386 U.S. 18, 22 (1967)).

### 1. Amended Tax Return and Payment Plan

Collins challenges the district court's ruling excluding evidence of her amended 2015 tax return and her 2017 payment plan. The court deemed the evidence scarcely probative of Collins's state of mind during the charged conduct and concluded this slight probative value was outweighed by a substantial risk of confusing the issues for the jury. *See* Fed. R. Evid. 403.

The court acted well within its discretion. Generally, a defendant's exhibition of good faith after filing or failing to file tax returns is not in itself relevant to her willfulness because the crime has already been completed. In the context of § 7206(1), for example, we have explained that "[t]he critical time-frame for determining willfulness is when [the defendant] signed the return, not two years afterwards." *See Powell*, 576 F.3d at 495 (first citing *United States v. McClain*, 934 F.2d 822, 835 (7th Cir. 1991); then citing *United States v. Radtke*, 415 F.3d 826, 840–41 (8th Cir. 2005)). Similarly, we explained that a violation of § 7203 is "completed at 12:00:01 on April 16." *Hassebrock*, 663 F.3d at 919; *see also United States v. Sawyer*, 607 F.2d 1190, 1193 (7th Cir. 1979) ("[L]ate tax payment [is] immaterial on the issue of willfulness in a Section 7203 prosecution." (quoting *United States v. Ming*, 466 F.2d 1000, 1005 (7th Cir. 1972))).

A court measures the relevance of subsequent action here by considering the link between the defendant's later conduct

and her earlier state of mind. *See United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014). Given this nuance, we approach the relevance of corrective action on a case-by-case basis. *See id.* Admitting such evidence is further complicated, and the link all the more important, when the defendant's actions follow notice she is under investigation, because her purported remedial conduct may be equally consistent with covering up intentional wrongdoing as with correcting an innocent mistake. *See id.*

Here, the district court noted that Collins's remedial conduct only occurred after she was "on notice" the IRS had discovered her unreported income. Despite this, Collins did not adequately show a link between the amended return or payment plan and her earlier state of mind. And even if the evidence was relevant, putting at issue whether Collins exhibited good-faith corrections would warrant rebuttal from the government, *see United States v. Curtis*, 781 F.3d 904, 910 (7th Cir. 2015), orienting the case toward Collins's culpability for uncharged conduct. This evidence would have posed serious risks of confusing the issues and unnecessarily complicating the trial. Therefore, the district court deemed the evidence inadmissible under Federal Rule of Evidence 403, which authorizes courts to exclude evidence where its relevance is "substantially outweighed by" considerations like "confusing the issues, misleading the jury, undue delay, [and] wasting time." Although there may be some cases in which a defendant links the remedial conduct with her prior state of mind and survives Rule 403 balancing, the court acted well within its discretion in concluding this was not one of those cases.

Collins attempts to distinguish her case from *Beavers* through the IRS's notice, but we see no material difference. As

in *Beavers*, Collins only acted after she was aware the IRS discovered her unreported income, so evidence of her remedial conduct could equally show her correcting a "genuine mistake" or her "cover[ing] up a purposeful lie in the hope of avoiding prosecution." 756 F.3d at 1050. In any event, Collins's evidence also post-dated the timeframe relevant to her mens rea.

Nor does Collins persuade us the district court's ruling infringed on her constitutional rights. Although Collins notes the court's ruling increased her incentive to testify, this does not itself violate the Fifth Amendment. Rules of evidence necessarily restrict a defendant's ability to present evidence without facing the scrutiny of testifying, but the burdens she challenges are "ordinary, well-established, and permissible." *See id.* at 1051. Moreover, a defendant's right to present a meaningful defense does not entail the right to present evidence in contravention of Rule 403. *Hinkle v. Neal*, 51 F.4th 234, 241–42 (7th Cir. 2022) (first citing *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); and then citing *Kubsch v. Neal*, 838 F.3d 845, 858 (7th Cir. 2016) (en banc)); *see Beavers*, 756 F.3d at 1052 (rejecting a similar argument on this basis).

### 2. Cross-Examination into Collins's Dishonesty at AIL

After Collins indicated she would testify, the government raised its intention to cross-examine Collins regarding the circumstances of her termination by AIL as probative of her character for untruthfulness. *See* Fed. R. Evid. 608(b). Collins challenges the court's ruling permitting the government's request.

This claim is not eligible for review, however, because Collins waived her objection by declining to testify. *See Luce v.*

*United States*, 469 U.S. 38 (1984). In *Luce*, the Supreme Court held that a defendant who declines to testify waives his challenge to a court's preliminary ruling permitting the government to impeach him by a prior conviction. This reflects a more general legal principle concerning "conditional ruling[s]," a paradigmatic example of which occurred here where the judge ruled that "if a litigant testifies, then the adverse party will be entitled to cross-examine in such-and-such a way." *See Wilson v. Williams*, 182 F.3d 562, 565 (7th Cir. 1999) (en banc). "In circumstances like this, the litigant must satisfy the condition in order to present the claim on appeal." *Id.* (citing *Luce*, 469 U.S. 38). Otherwise, with no actual testimony and commitments, a thorough review is "impossible." *Id.* It is therefore inappropriate for us to review Collins's objection. Having "exercised h[er] constitutional right to refrain from" testifying, Collins "cannot now attack a potential introduction of evidence by the government in response to h[er] potential testimony." *See United States v. Wilson*, 307 F.3d 596, 601 (7th Cir. 2002).

Despite Collins's efforts to cabin *Luce* to evidence of a prior conviction under Federal Rule of Evidence 609, our caselaw recognizes that the "*Luce* principle" applies beyond its original context. *See United States v. Wilson*, 307 F.3d at 600; *Wilson v. Williams*, 182 F.3d at 565. This approach is consistent with other circuits. *See United States v. Wilson*, 307 F.3d at 600 (collecting cases applying *Luce* principle).[1] Nor is Collins

---

[1] The application of *Luce* to rulings under Federal Rule of Evidence 608(b) is also consistent with the decisions of other circuits. *See, e.g., United States v. Cohen*, 887 F.3d 77, 84, 84 n.4 (1st Cir. 2018); *United States v. Weichert*, 783 F.2d 23 (2d Cir. 1986) (per curiam); *United States v. Sanderson*, 966

successful in arguing that her case is distinct because the court's ruling sincerely dissuaded her from testifying. *Luce* impliedly rejected the relevance of such a showing. *See* 469 U.S. at 42 (dismissing enforceable "commitment to testify" and noting defendant's decision to testify rarely turns on one factor). And her assertion does not change the speculation in a hypothetical balancing inquiry to which our caselaw objects. *See id.* at 41–42; *Wilson v. Williams*, 182 F.3d at 565.

Even if Collins did not waive her objection, the court's ruling was proper. A defendant places her credibility at issue by electing to testify, and accordingly the government may cross-examine that defendant as to whether she is testifying truthfully. Fed. R. Evid. 608(b); *United States v. Chevalier*, 1 F.3d 581, 584 (7th Cir. 1993). Collins does not dispute that her past fraudulent conduct would have been probative of her character for untruthfulness. This use of cross-examination for purposes of impeachment does not run afoul of the qualified prohibition on propensity evidence under Federal Rule of Evidence 404(b). We have addressed and rejected this conflation, and do so again here. *See Chevalier*, 1 F.3d at 584; *see also Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 626 (7th Cir. 2003) ("Federal Rule of Evidence 608(b) [] governs the admissibility of specific instances of conduct for purposes of impeachment ….").

Finally, Collins does not show a violation of her right to testify or her right against self-incrimination merely by raising the trade-offs many defendants face when deciding whether to testify. The right to testify does not entail the right

F.2d 184, 189–90 (6th Cir. 1992); *United States v. Dimatteo*, 759 F.2d 831, 832 (11th Cir. 1985).

to be free from central aspects of our adversarial legal system like cross-examination and impeachment. *See Ohler v. United States*, 529 U.S. 753, 759–60 (2000) ("[I]t is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." (quoting *McGautha v. California*, 402 U.S. 183, 215 (1971))).

### 3. Limitation of Expert Testimony

Collins next challenges the district court's pretrial ruling limiting testimony from defense expert Craig Greene that relied solely on Collins's out-of-court statements. Though she acknowledges her out-of-court statements informed Greene's testimony, Collins claims the court abused its discretion and violated her constitutional right to present a meaningful defense.

The district court did not abuse its discretion in excluding this hearsay evidence. We previously confronted this issue in *Beavers*, where the district court excluded an expert's testimony that "relied on his conversations with Beavers [the defendant] in forming assumptions and ultimately conclusions about the proper tax treatment of the transactions at issue." 756 F.3d at 1055. We upheld the exclusion on the basis that, "stripped of Beavers' statements, [the expert's] most important opinions lacked meaningful support," *id.* at 1056, an assessment informed by the "wide latitude" we give district courts in determining the reliability of testimony, *id.* (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)). Collins does not challenge the court's reliability determination; nor does she identify a distinction from *Beavers*. Accordingly, *Beavers* controls this issue.

Collins's constitutional challenge similarly fails. We find no support for the proposition that the Constitution inherently confers onto a defendant the right for an expert to testify "in full on her behalf." Where a district court reasonably concludes the testimony the defendant seeks to admit is unreliable, the exclusion of that testimony does not violate the defendant's constitutional right to present a meaningful defense. *See United States v. Hall*, 165 F.3d 1095, 1114 (7th Cir. 1999); *see also Brown*, 871 F.3d at 538 (expert testimony unreliable). Putting the court's ruling aside, we also note that Greene nonetheless presented to the jury many statements based on Collins's hearsay statements.

### C. Motion to Correct Sentence

Collins argues that the district court erred in denying her motion to correct the sentence from one year to a year and a day. This "correction" would have rendered Collins eligible for up to fifty-four days of good-time credit.[2]

---

[2] The government indicated at oral argument this claim is moot because Collins completed her term of incarceration. Mootness deprives this court of jurisdiction over a claim. *See United States v. Sanchez-Gomez*, 584 U.S. 381, 385 (2018). We are not convinced this claim is moot. A former inmate may challenge the length of his term of incarceration when he is on supervised release "so long as he could obtain 'any potential benefit' from a favorable decision," a possibility we have found in a motion under 18 U.S.C. § 3583(e) to reduce a defendant's term of supervised release. *Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir. 2018). The government did not represent that Collins had completed her term of supervised release, and it has been less than a year since the date the government represents Collins left imprisonment. Moreover, the "heavy burden" to show mootness is on the government. *See id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

The district court acted appropriately in denying Collins's motion to correct her sentence. We consider Collins's argument under Federal Rule of Criminal Procedure 35, which concerns situations of "clear errors" made by the judge. *United States v. Heon Seok Lee*, 937 F.3d 797, 817 (7th Cir. 2019). The rule provides that "[w]ithin 14 days after sentencing, [a district court] may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). The fourteen-day "time limit is jurisdictional." *United States v. Wisch*, 275 F.3d 620, 626 (7th Cir. 2001). In other words, "Rule 35 operates to deprive the court of authority to act after the time period specified in the rule has elapsed." *United States v. Bania*, 787 F.3d 1168, 1172 (7th Cir. 2015) (citation modified).

Because Collins did not file her motion until far more than fourteen days after the imposition of her sentence, the district court correctly denied her motion on the basis that it was without jurisdiction to alter her sentence.[3] *See id.*

*        *        *

The judgment of the district court is

AFFIRMED.

---

[3] We note the district court's alternative reasoning that if it had jurisdiction, the one-year term was the precise sentence the court intended to impose. The district court did not have anything to correct.