In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1317

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES A. SIMON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:10-cr-00056-RLM-1 — **Robert L. Miller, Jr.**, *Judge.*

ARGUED NOVEMBER 5, 2019 — DECIDED MARCH 6, 2020

Before FLAUM, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* James Simon appeals the district
court's decision denying his motions to reconsider amend-
ments to his restitution obligations. *See United States v. Simon*,
2019 WL 422447 (N.D. Ind. Feb. 4, 2019). We conclude that the
majority of the challenges Simon is making could and should
have been raised at sentencing and on direct appeal from his

conviction and were therefore waived; as to the remainder, his appeal is untimely. We therefore affirm the judgment.

**I.**

In 2010, a jury convicted Simon of filing false tax returns, failing to file reports related to foreign bank accounts, mail fraud related to financial aid, and federal financial aid fraud. Simon, a certified public accountant and entrepreneur, had under-reported his taxable income by millions of dollars, failed to file the requisite reports as to foreign bank accounts over which he had signature authority, and falsely pleaded poverty in order to secure need-based scholarships for his children at private schools. The district court ordered him to serve a six-year prison term, followed by a three-year period of super-vised release, and to pay restitution totaling $1,053,572.04: $886,901.69 to the Internal Revenue Service, $48,070.35 to the Department of Education, $17,000 to Canterbury School, and $101,600 to Culver Academies. Although Simon had filed numerous objections to the pre-sentence report, he made no objections to the probation officer's restitution calculations, which the court adopted, and he voiced no objections to the restitution obligations that the court imposed. We affirmed Simon's convictions in 2013; in that appeal, Simon raised no objections to his restitution obligations. *United States v. Simon*, 727 F.3d 682 (7th Cir. 2013).

In 2014, Simon moved to vacate his conviction pursuant to 28 U.S.C. § 2255, alleging that his trial counsel was ineffective in multiple respects, but not with respect to sentencing, including the restitution component of the sentence. The district court denied his motion, and neither the district court

nor we issued a certificate of appealability. *See United States v. Simon*, 2016 WL 3597579 (N.D. Ind. Jul. 15, 2016), *certif. of appealability denied*, 2017 WL 3397345 (7th Cir. Mar. 30, 2017), *cert. denied*, 138 S. Ct. 337 (2017).

Simon was released from prison in 2016. He completed his term of supervised release in May 2019. The bulk of his restitution debt remains outstanding, however.

In March 2016, the government filed a motion asking the district court to amend Simon's restitution obligations in limited respects. The government asked the court to remove Canterbury School as a payee, in view of Canterbury's ongoing declarations that it was not interested in restitution.[1] Removing Canterbury would have the effect of directing Simon's future restitution payments to Culver until such time as it was made whole, as private victims receive restitution payments ahead of the United States and its agencies. *See* 18 U.S.C. § 3664(i). The government asked the court to further amend the restitution order to indicate that Culver was owed an updated balance of $48,376, an amount considerably less than the $101,600 originally ordered. R. 231.

On the day after it was filed, the court granted the government's motion without a hearing. The restitution order was amended to reflect the revised balance owed to Culver: $48,376; Canterbury was removed as a restitution payee; and

---

[1] Both Culver and Canterbury had indicated prior to sentencing that they did not want restitution. Nonetheless, the court ordered Simon to make restitution to both schools, explaining that "[o]ddly, it's mandatory even though Canterbury and Culver say they don't want the money back." R. 174, Sentencing Tr. 455.

the restitution previously ordered to the Internal Revenue Service and the Department of Education were deemed not amended and reinstated. The court "directed the Clerk to make all future disbursements consistent with this order." R. 232. Within a week, Simon received by mail notice of both the government's motion and the district court's order.

Seven months later, in October 2018, Simon filed the first of two pro se motions to reconsider. He argued that he had a due process right to be heard on the government's motion to amend the restitution order; that the restitution he was originally ordered to make to Culver and Canterbury was based solely on financial aid, but that the revised figure for Culver set forth in the amended order as due to Culver constituted a new obligation based on *non*-financial aid and was therefore improper; and that the government had presented incomplete documentation to support the revised figure owed to Culver. Noting that both Canterbury and Culver had disclaimed any interest in restitution, Simon urged the court to eliminate his restitutions to both schools or, in the alternative, grant him a hearing and the opportunity to argue for a lower restitution figure. In a second motion filed in December 2018, Simon asked that the court strike all of the restitution due to the Department of Education based on his representation that his daughter had paid off her student loans and, consequently, the Department was no longer at any risk of having to honor its guarantee of those loans.

The district court denied Simon's motions. 2019 WL 422447. The court reasoned in the first instance that because the amendment to the restitution order had actually reduced Simon's total restitution obligation by $17,000 (by eliminating

Canterbury as a payee), Simon could not show that he had been deprived of a cognizable property interest and consequently had no viable due process claim. *Id.*, at *2. The court proceeded to reject Simon's argument that the amended restitution improperly included "non-financial aid." The balance owed to Culver as reflected in the amended order was "in no way 'new' restitution" nor was it unrelated to the financial aid fraud of which Simon had been convicted. *Id.*, at *3. The court also rejected Simon's assertion that an evidentiary hearing was required as to the amended order on the ground the documentation the government had submitted to establish the remaining restitution owed to Culver was incomplete, as Simon had not given the court any reason to believe that Culver had misled the court or the parties as to what it was owed. *Id.*, at *4. Finally, although Simon argued that he should no longer be obliged to make restitution to the Department of Education, the court found his arguments to be a "rehash[ ]" of those made at sentencing and that he could not re-litigate the obligations imposed by the original restitution order after the fact. *Id.*

Simon filed a timely notice of appeal from the district court's order denying his motions for reconsideration.

## II.

The district court's order denying Simon's motions for reconsideration was a final order, and as such we have appellate jurisdiction under 28 U.S.C. § 1291. *See Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 745 (7th Cir. 2007) (order which disposes of all issues raised in post-

judgment motion will be treated as final for purposes of § 1291).

The primary challenges Simon advances on appeal are aimed at the validity of the restitution obligations imposed by the original sentencing order. These include his arguments that the district court improperly ordered restitution (1) for losses associated with relevant conduct; (2) to parties (including Culver as well as Canterbury) who, from the outset, disclaimed any interest in receiving restitution.

The first of these arguments was not made below, as Simon acknowledges, with the consequence that it was waived. *E.g.*, *United States v. Valenzuela*, 931 F.3d 605, 609 n.1 (7th Cir. 2019), *cert. denied*, 2019 WL 6257440 (U.S. Nov. 25, 2019).

Moreover, the time to raise these sorts of arguments was at sentencing and on direct appeal from the judgment. *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) ("Nonconstitutional claims like this one, which could have been raised on direct appeal but were not, are deemed waived even without taking cause and prejudice into account.") (citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)); *United States v. Bania*, 787 F.3d 1168, 1171–72 (7th Cir. 2015) (collecting cases). Simon's argument regarding the propriety of awarding restitution based on relevant conduct explicitly references and is based upon the pre-sentence report, so there can be no doubt that he could have made this same argument at sentencing and in his direct appeal. Likewise, the parties and the court were aware at the time of sentencing that Culver and Canterbury both disclaimed their right to restitution, so that too was an issue that Simon could have raised at that time. His

failure to advance these claims in a timely manner amounts to a waiver.

Simon suggests that the March 2016 amendment of the restitution order opened the door to any and all challenges to his restitution obligations, even those that would otherwise be deemed procedurally defaulted. We disagree. We may assume that a new obligation imposed by the amended order might be fair game for challenge, but the amended order neither imposed a new obligation nor materially altered the nature of Simon's existing restitution obligations. The amendment to the restitution order did not amount to a re-sentencing or even a de novo reconsideration of restitution. It simply eliminated one restitution payee and updated the amount owed to another.

The sole challenge that Simon directed to the amended, as opposed to the original, restitution order posited that the updated balance owed to Culver was not adequately substantiated. He renews that contention here, adding that the district court improperly assigned to him the burden of showing that something was amiss with the revised figure. He requests that, in the event we do not strike the restitution due to Culver altogether, we remand for an evidentiary hearing.

Here we run into yet another timeliness problem. Simon did not immediately appeal the district court's decision amending the restitution order, nor did he file a motion to reconsider within the 14-day time period to appeal so as to render the order non-final and postpone the appeals deadline. *See United States v. Rollins*, 607 F.3d 500, 501–02, 504 (7th Cir. 2010). The 14-day time period of Federal Rule of Appellate Procedure 4(b)(1)(A) controls, because Simon's restitution

obligations were part of his original sentence. *See United States v. Apampa*, 179 F.3d 555, 556–57 (7th Cir. 1999) (per curiam) ("the *core* of a 'criminal case' to which Rule 4(b) applies is the sentence") (emphasis in original); *see also United States v. Segal*, 938 F.3d 898, 902–03 (7th Cir. 2019) (noting that civil appeal deadlines may apply "under the umbrella of criminal cases" where appealable order is "collateral to criminal punishment," but criminal deadlines control where order or issue is "part of the criminal sentence") (cleaned up). Simon's motions were filed well outside this period—more than seven months after the district court revised the restitution order—with the result that the notice of appeal he filed after the court disposed of his motions to reconsider was untimely as to the court's March 7 order. *See id.* at 502. And because the government is standing on its rights as to the timeliness of Simon's notice of appeal, we are obliged to deem the appeal too late to preserve Simon's challenges to the amended restitution order. *See Rollins*, 607 F.3d at 501–02.

Simon has also renewed his argument that he should be given the opportunity himself to seek an amendment to the restitution order to relieve him of the obligation to make payments to the Department of Education. Simon represents that his daughter had paid off her student loans, and as a result the Department of Education no longer faces any liability on its guarantee of those loans. But even if we assume arguendo that the district court was wrong to characterize this line of argument as a "rehashing" of the position he took at sentencing, 2019 WL 422447, at *4, Simon has not, as the district court pointed out, identified a mechanism to seek a substantive change in his restitution obligations so many years after

sentencing, *id.* "Once a court sentences a criminal defendant, it has jurisdiction to continue hearing related issues only when authorized by statute or rule." *United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003). Here, the fourteen-day deadline for correcting a sentencing error under Federal Rule of Criminal Procedure 35(a) had long passed by the time Simon filed his motions. A second motion under section 2255 would be unavailable to address Simon's concerns, given that restitution does not meet the "custody" element of the statute. *Barnickel*, 113 F.3d at 706. A material change in the defendant's economic circumstances affecting his ability to pay restitution might allow *some* adjustments to the restitution order, *see* 18 U.S.C. § 3364(k), but even if Simon's daughter has repaid the underlying school loans, that does not constitute a material change in *his* economic circumstances. And none of the other avenues referred to in section 3664(o)(1) appear available to Simon. *See United States v. Puentes*, 803 F.3d 597, 607–08 (11th Cir. 2015) (surveying these possibilities).

Having said all this, we add that we are not without our doubts as to whether the district court had the authority to entertain the *government's* motion to amend the restitution order.[2] *See Puentes*, 803 F.3d at 607 ("every circuit court to

---

[2]   On appeal, the government has framed the issue as jurisdictional; however, we agree with our sister circuits that "the question before us does not implicate the district court's subject matter jurisdiction." *United States v. Wyss*, 744 F.3d 1214, 1217 (10th Cir. 2014); *see also Puentes*, 803 F.3d at 605–08; *United States v. Grant*, 715 F.3d 552, 558 (4th Cir. 2013). Instead, it implicates "the district court['s] lack[] [of] statutory authority to order a belated reduction in Defendant's restitution …." *Wyss*, 744 F.3d at 1217. This

(continued...)

consider this issue has indicated that a district court may only modify a mandatory restitution order through the means specified in § 3664(o)"); *see also id.* at 608 ("a district court may not modify a mandatory order of restitution unless one of the circumstances in § 3664(o) applies"); *cf. United States v. Pawlinski*, 374 F.3d 536, 540-41 (7th Cir. 2004) (emphasizing that federal courts do not have discretion to redirect restitution in a manner that ignores the statutory limits Congress placed on restitution orders). When we inquired about this at oral argument, the government's counsel indicated that it was relying on section 3664(k). But as is true with respect to Simon's challenges, section 3664(k) would appear to be inapplicable, as the government's motion was not premised on a material change in Simon's economic circumstances. In any case, Simon's attempt to challenge the order granting the

---

[2] (...continued)

determination "does not utilize 'authority' in the jurisdictional sense, but in the sense in which a court lacks 'authority' to impose, for instance, a sentence below a statutory minimum." *Id.* (citing *Dolan v. United States*, 560 U.S. 605, 626, 130 S. Ct. 2533, 2547 (2010) (Roberts, C.J., dissenting)). We take this opportunity to clarify that district courts have subject-matter jurisdiction to consider a motion to correct, modify, amend, or adjust restitution consistent with § 3664(o) regardless of whether the movant is in fact statutorily eligible for such relief. *See United States v. Ceballos*, 302 F.3d 679, 692 (7th Cir. 2002) (explaining that "judges and legislators sometimes use the term jurisdiction to erroneously refer to a court's authority to issue a specific type of remedy, rather than to the court's subject-matter jurisdiction"); *see also United States v. Taylor*, 778 F.3d 667, 669–71 (7th Cir. 2015) (holding that a district court had jurisdiction—meaning the power to adjudicate—a motion for a reduced term of imprisonment even though it was without the authority to grant the motion because the defendant did not satisfy the statutory criteria for relief).

government's motion comes too late. We end by noting, as the district court did, that the revisions to Simon's restitution obligations were not to his detriment, as they eliminated one payee altogether and simply reflected a lower, updated balance owed to another. 2019 WL 422447, at *2.

## III.

Finding none of Simon's challenges to his restitution obligations, as established by either the original or amended restitution order, to be timely, we AFFIRM the denial of his motions to reconsider.

HAMILTON, *Circuit Judge*, concurring. I join the court's opinion in all respects, including our concerns about the district court's authority to grant the government's original motion to modify the restitution portion of the sentence. There was no timely appeal regarding that modification, though, and without a proper appeal, we do not have the power to correct a non-jurisdictional error. See *Greenlaw v. United States*, 554 U.S. 237 (2008).

I write additionally to highlight a related issue that arose here and that may arise in other cases: the district court's authority to resolve post-sentencing disputes about restitution, particularly with respect to credit for payments made. During oral argument, this court raised the issue of the district court's authority, statutory or otherwise, to amend the restitution portion of the judgment as the government asked in its motion. Counsel had given thoughtful consideration to the problem, but no fully satisfactory answer emerged. I offer not a fully satisfactory answer but in essence a tracing of steps so that the choices are clear. Perhaps a better answer will arise from litigation or legislation.

The total amount of restitution for each victim and relative priorities among them are part of the core criminal judgment. 18 U.S.C. §§ 3663 & 3663A. Challenges to those numbers and priorities need to be raised in a direct appeal. *United States v. Bania*, 787 F.3d 1168, 1172 (7th Cir. 2015) (rejecting late challenge to restitution order); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (same). The procedures for issuing and enforcing restitution orders as part of criminal sentences are set forth in 18 U.S.C. § 3664.

Counsel suggested § 3664(k) as a source of the court's authority here. I'm not so sure. If the defendant's economic circumstances have changed in a way that may affect his ability to pay restitution, § 3664(k) authorizes a district court to adjust a payment schedule or to require immediate repayment in full. Those statutory terms do not seem to apply to this case, nor to a perhaps more routine disagreement about crediting restitution payments actually made. There was no change in defendant Simon's economic circumstances, and the court's amendment to the restitution order was not merely an adjustment of a payment schedule or an order of immediate repayment.

A second suggested possibility is § 3664(o). That provision, however, explains only that a sentence with an order of restitution is a final, appealable judgment notwithstanding the fact that the sentence might be modified in any of several ways. Most of the cited paths to modification are not specific to restitution. The paths specific to restitution also don't seem to apply here. Subsection 3664(o) mentions § 3664(k), but that doesn't add anything new. Subsection 3664(o) also mentions amendment under § 3664(d)(5), which allows some later amendments to a restitution order where a victim is not able to identify or calculate full losses at the time of original sentencing. That's also not the problem here.

Next, § 3664(o) mentions 18 U.S.C. § 3572. That statute governs fines as part of criminal sentences and authorizes some limited forms of amendment after sentencing. It can be applied to restitution orders pursuant to § 3664(m)(1), but the government has not relied on it. Finally, § 3664(o) mentions

18 U.S.C. § 3613A, which authorizes a district court to take measures when a defendant fails to make payments toward a fine or restitution as ordered. While Mr. Simon has made only modest payments toward his restitution obligation, the government has not invoked § 3613A, which also would not apply to a dispute about credits for payments or, as in this case, one victim's decision not to seek or accept restitution.

Still, there may be some better statutory answers to my question than have been raised so far. Paragraph 3664(m)(1) provides cryptically: "An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title" or by "all other available and reasonable means." The cross-references direct the reader to 18 U.S.C. §§ 3571–3573 and §§ 3611–3615. With one exception in § 3572(d)(3), those statutes put the ball in the government's court to initiate enforcement efforts and modifications. They clearly contemplate that the district court will resolve such issues. See 18 U.S.C. §§ 3573, 3613, & 3613A. See also § 3664(j)(2) & (n) (using passive voice—"shall be reduced" and "shall be required"—where district court is obvious candidate to "reduce" or "require").

Where does that leave us in terms of resolving administrative disputes (as distinct from the doubtful authority to modify each victim's total amount and priorities among them)? I would point to either the tools available under § 3664(m) or the district court's inherent authority to administer a part of its judgment that imposes continuing obligations. I offer the inherent authority idea with diffidence. The specific statutory

authority for other types of amendments tends to weigh against finding other authority implied regarding a subject—restitution—that is established by statute and governed by statute in such detail. More generally, I am aware of how cautious courts must be with exercises of inherent authority. See, e.g., *Degen v. United States*, 517 U.S. 820, 823 (1996) (discussing general need for restraint in resorting to inherent authority); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (affirming use of inherent authority to impose sanctions for litigation conduct, but cautioning need for restraint); *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987) (contempt power is inherent but must be exercised with restraint); *Fuery v. City of Chicago*, 900 F.3d 450, 463–64 (7th Cir. 2018) (discussing inherent power generally and affirming district court's inherent authority to enter judgment against parties who willfully misled court and disobeyed court orders).

Despite this need for caution, however, there is a practical need for someone to be in charge of the continuing administration of the restitution obligation and disputes that may arise under it that do not involve the total amount and victim-specific amounts and priorities that should be resolved at sentencing or on direct appeal. The restitution obligations are part of the sentence, and I see no candidate better than the sentencing court for resolving such disputes that cannot be resolved by agreement of the parties.

If there is a better statutory answer, and § 3664(m) may provide it, I would welcome it. If not, I hope those not satisfied with inherent authority would endorse legislation expressly authorizing such continuing supervision by a district

court, perhaps akin to a court's continuing authority over a defendant on supervised release. See 18 U.S.C. § 3583(e)(2) (court may modify conditions at any time prior to expiration of term).