**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2021[*]
Decided May 7, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

Nos. 20-2159 & 20-2176

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeals from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | Nos. 1:13–cr–00919 & 1:14–cr–00731 |
| RASHID MINHAS, | Gary Feinerman, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Rashid Minhas, a federal prisoner, sought compassionate release based on his elevated risk for complications from COVID-19, which he believed he was likely to contract in prison, because of his hypertension and diabetes. After the Bureau of Prisons released Minhas to home confinement, the district court denied Minhas's motion, reasoning that he no longer needed a reduced sentence to avoid the dangers posed by COVID-19 in an institutional setting. On appeal, Minhas argues that he still needs a

---

[*] We have agreed to decide this appeal without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

reduced sentence so that he can hold a job and support his children. Because Minhas waived that argument by not raising it earlier, and because the district court reasonably concluded that his reason for early release had evaporated, we affirm.

From 2008 to 2009, Minhas used one of his travel companies to sell airline tickets to travelers, then voided the tickets and pocketed the refund, often stranding his customers mid-journey. He pocketed over $1 million before he was charged with mail and wire fraud. *See* 18 U.S.C. §§ 1341, 1343. While on pretrial release, he used a second travel company to pull the same scam, defrauding customers and airlines of another $500,000. He was charged in a separate indictment with additional counts of wire fraud and committing an offense while on pretrial release *Id.* § 3147. Minhas was convicted in 2015 of all charges (one set at trial and the other by guilty plea) and, after his two cases were consolidated for sentencing, he was sentenced to a total of 114 months in prison.

In February 2020, Minhas moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). He argued that his hypertension and type 2 diabetes put him at an increased risk of severe illness from COVID-19, which he was likely to contract given the close quarters in prison. The district court denied this motion because Minhas had not shown that he had exhausted his administrative remedies.

Minhas tried again. In April, after exhausting his administrative remedies at the prison, he moved for reconsideration of his request for compassionate release. He renewed his arguments for a sentence reduction to time served, contending that he was at risk of serious illness from COVID-19 given his health conditions and his inability to protect himself from contracting the virus in prison. He further cited the sentencing factors under 18 U.S.C. § 3553(a): He was in his late forties with a compromised immune system, had completed more than half of his sentence, was a non-violent, first time offender, and was a father of three. The government conceded that Minhas had exhausted his administrative remedies and, given his health conditions, had extraordinary and compelling reasons for release. Even so, the government argued, the sentencing factors—the seriousness of Minhas's crimes, his failure to take responsibility or express remorse, his commission of the same crime while on pretrial release, and his multiple disciplinary violations in prison—weighed against his release.

Before Minhas filed his reply brief, the Bureau of Prisons released him to home confinement. Minhas then obtained counsel and replied to the government's opposition. In the short brief, he stated that he "should be granted compassionate release" despite his home confinement because his medical conditions were serious

enough to constitute an extraordinary and compelling reason for reducing his sentence and the sentencing factors supported doing so.

The district court denied Minhas's motion for compassionate release. In a short text order, it explained that because Minhas was released to home confinement, he no longer needed a sentencing reduction to avoid the risks posed by COVID-19 in a prison setting. Thus, he no longer had an extraordinary and compelling reason for release.

On appeal, Minhas challenges the denial of his motion for compassionate release, a decision to which we apply deferential review. *See United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020). He contends that he needs to be released from home confinement so that he can find a job, which will enable him to bring his daughters from Pakistan, where they live with their mother, to the United States, where he can support them. But Minhas waived this argument by failing to present it to the district court. *See United States v. Simon*, 952 F.3d 848, 852 (7th Cir. 2020).

Based on the arguments before it, the district court did not abuse its discretion in denying Minhas's request for compassionate release. District courts "may" reduce a sentence under § 3582(c)(1)(A)(i) when the defendant has shown "extraordinary and compelling reasons [that] warrant such a reduction" and the sentencing factors under 18 U.S.C. § 3553(a) support doing so. As the district court reasonably explained here, Minhas's release to home confinement eliminated the only ground he presented for reducing his sentence: his health conditions and the threat of COVID-19 in the prison environment. On home confinement, he no longer faced that threat. True, after his release, Minhas asserted that his medical conditions "by themselves" presented an extraordinary and compelling reason for release. But he did not explain why, based on his chronic conditions, he should serve only 60% of his sentence, so the court did not need to address that question specifically. *See United States v. Joiner*, 988 F.3d 993, 996 (7th Cir. 2021). Indeed, Minhas never suggested that his conditions, absent the threat of COVID-19 in the prison setting, are "terminal" or otherwise of the severity contemplated by U.S.S.G. § 1B1.13 Application Note 1(A), the non-binding commentary that still provides a "working definition" of "extraordinary and compelling" medical reasons for compassionate release. *See Gunn*, 980 F.3d at 1180.

AFFIRMED